[Civ. No. 2739.   Fourth Dist.   Jan. 29, 1942.]

H. G. FENTON MATERIAL COMPANY (a Corporation), Appellant, v. PAUL CHALLET et al., Respondents.

Charles C. Crouch and George W. Crouch for Appellant.

Benjamin F. Tyler, Edgar A. Luce and Luce, Forward, Lee & Kunzel for Respondents.

GRIFFIN, J.—This is an action by plaintiff and appellant H. G. Fenton Material Company, a corporation, against defendants and respondents Paul Challet and Germaine Challet, husband and wife, and G. W. Billings and A. W. Billings, to enjoin respondents from operating or constructing a certain rock and gravel plant and from selling rock or gravel therefrom. Appellant, for a long time prior to the commencement of this action, had been engaged in the business of producing sand, rock and gravel for building and construction purposes and in operating several such plants in San Diego County. Some time prior to July 23, 1938, the respondents Paul Challet and Germaine Challet, under the name and style of Challet Concrete Service of San Diego, were engaged in a similar business in that county and were operating at a plant located in Otay Valley. Appellant and the Challets on

July 23, 1938, entered into a written agreement appertaining to the sale of the Challet property and a ready-mix cement plant located thereon. Clause VI of the contract, signed by both Mr. and Mrs. Challet, is the important provision, as far as this appeal is concerned, and reads as follows:

"Seller, as a part of his sale, sells to Buyer and the Buyer purchases from the Seller the whole of the rock, sand, concrete and materials business now and heretofore operated by Seller, including the good will and full benefit thereof and Seller hereby covenants, promises and agrees to and with the Buyer that he will not either directly or indirectly, alone or with others, enter upon or engage in the rock, sand, gravel or concrete manufacturing business within the county of San Diego or city of San Diego, in the State of California, so long as the Buyer, or any person deriving title to the good will from him, carries on a like business therein, nor in any event within a period of ten years from this date. Seller further agrees to submit no bid or bids on outside public works, contracts or projects where in so doing he would be in direct competition with the Buyer, within San Diego County, within the period of time above specified."

After the execution of the contract the possession of the premises and plant were surrendered to the appellant and the respondents Challet retired from the business. It is apparent from the evidence that notwithstanding the covenants so made by the respondents Challet, on or about October 25, 1939, and with the intention of engaging in the rock, sand, gravel and concrete manufacturing business within the county of San Diego in competition with the appellant, they purchased for $2,000, in Mrs. Challet's name, a tract of land containing such a deposit of rock, sand and gravel. The tract was near to one of the plants of the appellant. Mrs. Challet claims that the money with which she purchased the property was her separate funds. The respondents Billings had been engaged in the trucking business in San Diego County since 1930. They claimed that for several years they had contemplated going into the sand and gravel business in order to find work for their trucks, and had bought a steam shovel and bunkers about two years prior to the commencement of the present action; that a few months prior to March, 1940, one of the respondents, A. W. Billings, heard that Mrs. Challet had purchased the gravel land in Otay Valley; that

he called upon her for the purpose of negotiating a lease of the land; that no one invited him to contact her and he had not previously discussed with either Mr. or Mrs. Challet the possible use of the land; that he made a proposition to them to lease the land for the purpose of erecting a plant thereon and producing sand and gravel; that a few days later the lease was entered into; that before the execution of the lease, there was no discussion between the parties as to the employment of Paul Challet or in regard to any connection on his part with the enterprise. The lease was dated March 30, 1940, extended over a period of 99 years, and designated Germaine Challet as the lessor and Billings Truck Company, a copartnership, as the lessee. By its terms Mrs. Challet leased the property for the purpose of the lessees' taking out, producing and removing sand, gravel, rock and other products thereof, and for which the lessees agreed to pay her 7½ cents for each yard of sand, gravel, rock and other material removed from the land as rental thereof. The Challets borrowed $3,000 on certain property they owned, and Mrs. Challet loaned that sum to the respondents Billings to be used in the erection of the plant. This obligation was secured by a chattel mortgage on the plant and machinery. A note and mortgage representing that indebtedness was taken in the name of Frank Conde, the father of Mrs. Challet, which was later assigned to Mrs. Challet.

At the time of the trial of the case, the respondent Paul Challet was in the employ of the Billings, supervising the construction of the plant. The respondents all claim that no interest whatever was assigned or given to Paul Challet in the business or enterprise, and that his entire remuneration was agreed to be $40 per week; that the Billings Truck Company paid the salaries and wages of the men employed and all of the expenses of construction and for the machinery. On or about May 20, 1940, the respondents mutually agreed to cancel the lease and in lieu thereof entered into an agreement whereby Mrs. Challet should sell and transfer the leased land and deliver title to the Billings. This agreement was consummated. The consideration was a down payment of $200 and a further sum of $14,800 to be paid in amounts of $200 per month. The unpaid balance was secured by a deed of trust covering the land so sold.

A. W. Billings testified that the cost of the lease was too

great, and, therefore, decided to purchase the land outright. The trial court found generally that the transaction on the part of the Challets was entered into with the intent of wrongfully profiting from their violation of the provisions of the contract which they had theretofore made with the appellant; that at the time of the commencement of the action the plant was being erected by the Billings with the intention of competing with the plaintiff in the sand, rock, gravel and concrete manufacturing business in the county of San Diego; that prior to March 30, 1940, the Billings examined and had full knowledge of the agreement between appellant and the Challets and particularly paragraph VI thereof, but specifically concluded that "no conspiracy existed between the defendants." From these facts and findings above mentioned the court concluded that the agreement between the appellant and the respondents Challet, which imposed restrictions against those particular respondents engaging in the rock, sand, gravel and concrete manufacturing business, was in all respects fair, reasonable, valid and binding; and that those defendants (Challets) were not entitled, directly or indirectly, alone or with others, to engage in such business in the county of San Diego for a period of ten years, so long as plaintiff was carrying on a similar business therein; that the appellant was entitled to a decree enjoining the respondents Challet from any violation of the provisions of clause VI of the contract and from being in the employ of the respondents Billings in the erection of the rock plant and from assisting them in any way relating to such business.

As to the respondents Billings, the court found that the appellant was entitled to an injunction enjoining them from employing either of the respondents Challet in connection with either the rock plant or its business, and from aiding or abetting such respondents in any way to violate the provisions of their contract with the appellant. Judgment was entered accordingly. The court refused to enlarge the terms of the injunction as against the respondents Billings as requested and refused, particularly, to enjoin them from marketing the products of the respondents Billings in that class of competition with the appellant which was prohibited by the terms of appellant's agreement with the respondents Challet. It is in this respect that they complain of the judgment.

Appellant argues that all of the respondents acted in con-

cert and collusion to wrongfully and unlawfully destroy appellant's contract rights, notwithstanding the fact that the trial court concluded from the evidence that no conspiracy had been proved or established. It is rather difficult for this court to reconcile the conclusion that there was no conspiracy with the findings above quoted.

From an examination of the oral opinion of the trial court, printed in the record, it appears that appellant was denied any further relief than that given, under the impression that appellant could and should "when this plant is constructed, and when it begins to operate . . . in competition with Mr. Fenton" resort to some action in damages rather than injunction, "arising from a breach of this contract."

■ The authorities of the various states are not uniform on the subject but it is the general rule that injunction will ordinarily issue only against parties to the agreement or those in privity with them. One who is in no sense a party to the covenant cannot properly be restrained from carrying on such competing business although he may properly be restrained from aiding the covenanter in violating the covenant or from employing the covenanter in such a way as would involve a breach of the covenant or from engaging in a competing business, in partnership with, or as an agent or employee of the seller. The court may, where the contract is valid, enjoin the party complained of not only from violating its terms but also from employing or combining with others to accomplish the same result. ■ The rule that a stranger to a restrictive covenant can properly be enjoined from engaging in business with a covenanter so as to result in a breach of the covenant applies to corporations. Ordinarily, however, the corporation should not be enjoined from conducting a business independently of the covenanter, unless the circumstances are such that the corporation is to be regarded as the alter ego of the covenanter or a mere instrumentality by means of which the covenanter seeks to evade the agreement. (28 Am. Jur. 298, sec. 104.)

It has recently been held that in California an action will lie for unjustifiably inducing a breach of contract (*Imperial Ice Co.* v. *Rossier,* 18 Cal. (2d) 33 [112 Pac. (2d) 631]), and that a contracting party may enjoin a stranger to the contract from unlawfully interfering with his business or his rights under the contract where the acts complained of would

result in irreparable damage for which he has no adequate remedy at law. (*California Grape Control Board, Ltd.*, v. *California Produce Corporation, Ltd.*, 4 Cal. App. (2d) 242 [40 Pac. (2d) 846].)

Assuming without deciding that respondents Billings, not being parties to the contract of sale of the good will of a business, may also be enjoined against competitive operation of the business in question (*Fleckenstein Bros. Co.* v. *Fleckenstein*, 66 N. J. Eq. 252 [57 Atl. 1025, 1028]; *Thompson* v. *Andrus*, 73 Mich. 551 [41 N. W. 683, 686]), we have only the question before us to determine on this appeal whether, under the evidence, the trial court was justified in denying appellant the additional relief sought as against the respondents Billings, i. e., (1) from operating or proceeding further with the construction of the plant; (2) selling or agreeing to sell any sand, rock or gravel products therefrom.

Section 526 of the Code of Civil Procedure provides when an injunction may be granted and when an injunction cannot be granted.

As a general rule, the power of a court over its orders and decrees in injunction is the same as that which it, as a court of equity, exercises over its other orders or decrees. (*De Godey* v. *Godey*, 39 Cal. 157; 28 Am, Jur., page 486, sec. 315; *Wholesale Tobacco Dealers Bureau* v. *National Candy & Tobacco Co.*, 11 Cal. (2d) 634, 662 [82 Pac. (2d) 3, 118 A. L. R. 486]; *Vesper* v. *Forest Lawn Cemetery Assn.*, 20 Cal. App. (2d) 157 [67 Pac. (2d) 368]; *Willis* v. *Lauridson*, 161 Cal. 106 [118 Pac. 530].)

In *Slade* v. *Sullivan*, 17 Cal. 102, the trial court denied an application for injunctive relief. In upholding that order the Supreme Court said:

"We do not see upon what ground we could interfere with the decision in this case. The prayer for an injunction was addressed to the sound discretion of the court, and we cannot perceive that there was any abuse of discretion in refusing to grant it. . . . It does not appear that any of the injuries, for which, if committed, he will be entitled to recover, may not be compensated in damages, and under the circumstances, we cannot undertake to say that an injunction was improperly refused."

While the evidence in this case might well support an opposite conclusion, it cannot be said that the failure of the trial court to include as a part of the injunctive decree

the additional relief sought was an abuse of discretion, especially as there is evidence supporting the specific determination that G. W. and A. W. Billings did not conspire with their codefendants to breach the contract.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied February 27, 1942, and appellant's petition for a hearing by the Supreme Court was denied March 27, 1942. Curtis, J., Houser, J., and Carter, J., voted for a hearing.