LEONARD and ELVIRA H. MATTHEWS, JEANETTE MILLER SHULTS and MARYLAND AVENUE PROPERTY OWNERS ASSOCIATION v. FIRST CHRISTIAN CHURCH OF ST. LOUIS, a Corporation, and R. A. HARMON, Appellants.—No. 39827.—197 S. W. (2d) 617.

Division One, October 14, 1946.

Rehearing Denied, November 11, 1946.

*Lashly, Lashly, Miller & Clifford, Jacob M. Lashly, Arthur V. Lashly* and *Oliver J. Miller* for appellants.

*Martin, Peper & Martin, William McChesney Martin, Christian B. Peper* and *Malcolm W. Martin* for respondents.

**HYDE, P. J.**—Injunction against use of property for a church, found to be in violation of covenants restricting use of land, from which defendants have appealed. Plaintiffs alleged damages in excess of $10,000.00 and defendants raised constitutional questions by answer.

The restrictions were made in 1892 for Block 3894 in St. Louis, bounded by Maryland Avenue on the north, Lindell Boulevard on the south, Taylor Avenue on the east and Euclid Avenue on the west. This controversy involves only the lots on the south side of Maryland. There were 16 separate family residences on them, all occupied by the owners. There was only one rented house, the owner of which lived across the street. The houses were from 30 to 40 years old but were well kept and some had been modernized. The original restrictions applicable to the lots fronting on Maryland were in part as follows:

". . . But one residence building shall be erected or placed upon each of said lots and such building shall never be used or occupied for any purpose except for that of private residence; nor shall any part or portion thereof ever be used or occupied except solely as a residence; nor shall such building be arranged or ever used or occupied as flats; nor shall said lots or any portion thereof ever be used for trade, manufacture, or business of any kind whatever."

". : . After 25 years from the date of this deed, the owners of the majority or greater part of the frontage on Maryland Avenue, within said block, may by written consent . . . alter, modify, or repeal, so far as the lots fronting on Maryland Avenue in said blocks are concerned, any or all of the foregoing restrictions . . ."

These restrictions were construed and enforced in Noel v. Hill, 158 Mo. App. 426, 138 S. W. 364. In 1926, restrictions were removed from the lot at the west end of the block to permit the construction of a business building. In 1928, the restrictions on all the lots were amended to change the building line and also further as follows:

"The other provisions of said restrictions shall be amended so as to allow the erection of or alteration to buildings on said lots so that said buildings and lots may be used for retail mercantile business and apartments."

There were double street car tracks in Maryland Avenue. Two business buildings have been built at the west end of the block on the south side of the street. They were occupied by four stores, the Busy Bee candy store, a ladies dress shop, a carpet and rug salesroom, and a fur store. There were other stores on the north side of Maryland Avenue (which was not subject to these restrictions) at the west end of the block, occupied by an art shop, a grocery, a millinery store, a shoe store and a bar. These buildings were about 30 years old. There were two nine story apartment buildings at the east end of the block on the north side and there was a drug store and a beauty shop in these buildings. The rest of the north side of Maryland Avenue was in single family residences. In the next block west, extending to Kingshighway, there was one of the best shopping districts in the city. On the north side, across Euclid Avenue there was a large hotel. There were other churches and schools, and also apartments, hotels and stores, in the neighborhood. A complete description of the surrounding territory may be found in Proetz v. Central District of Christian and Missionary Alliance (Mo. App.), 191 S. W. (2d) 273. ▇▇ The zoning ordinance of the city, which was adopted in 1926, permitted business buildings at the end of the block and restricted the rest to one and two family dwellings. Thus it has been the zoning ordinance which has kept business buildings and large apartments out of this block since 1928. This ordinance, however, authorized a church or school in such a residence district.

Defendants purchased a large three story brick residence in the middle of the restricted block and commenced to use it as a church without making any exterior changes except to put up a sign. It occupied two lots with a total frontage of 100 feet. The evidence showed that a considerable number of people congregated for church services on Sundays and Thursdays; that this filled the street with parked cars; and that music and singing in the church could be heard during the services. There was also evidence that this use of the property would cause a decline in value of the property in the block for residence purposes of from 25 to 30 per cent, and would materially affect the street as a residence district from the standpoint of its desirability as a place to live. Defendant's had evidence to show that the use of the property as a church would not depreciate values.

Defendants contend that the 1928 modification of the restrictions defeated their original purpose and amounted to a waiver of the rights of the owners to enforce them against use for church purposes. They point to the zoning ordinance provision allowing a church in a residential district and argue that a church is a higher class of use in zoning than mercantile business use. Defendants also contend that the character of the neighborhood had so radically changed as to render the restrictions of no value; and that there had been acquiesence in non residential use of the building involved for a 15 year period. (This was for instruction in sculpturing, painting, voice culture and dancing.) Defendants further contend that judicial enforcement of the restrictions to prevent use of the lots for church purposes would deny defendants due process of law and equal protection of the law. The trial court found that "the contention that the character of the neighborhood has so changed as to defeat the purpose of the covenant is not sustained by the evidence." The Court further found "the church is an asset to the neighborhood and damages no one"; and that "the inconvenience it may cause to a few persons by reason of automobiles being parked along the street is trivial." Nevertheless, the Court decided that the maintenance of the church at this location was a violation of the restrictions under our decisions in Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S. W. (2d) 545 and Britton v. School District of University City, 328 Mo. 1185, 44 S. W. (2d) 33.

It is well settled that "equity will enjoin the violation of restrictive covenants, irrespective of the amount of damage which would result from a breach, and even though there be no substantial monetary damage. The covenantee may stand upon his contract and the law will enforce it." [Rombauer v. Compton Heights Christian Church, supra, and cases cited.] Therefore, the finding of the court that there was no financial damage is not decisive. We think the evidence amply supports the finding that the character of the neighborhood had not sufficiently changed to defeat the purpose of the covenant

632

and accept it for the purposes of this review. (See Civil _Code, sec. 114d, Sec. 847.114d Mo. Stat. Ann.) . In fact, it appears that, in recent years, this block has become more stablized as a residence district.

█ Nor can we agree with defendants' argument to the effect that the 1928 modifications amounted to a waiver of the right to enforce the restrictions against use for church purposes or any other purposes outside of their terms. The principle of authorizing a higher class use (and prohibiting a lower class use) is one of zoning law, which is based on statutory authority, and cannot be applied to the construction of restrictive covenants. Instead, we think the principle of Britton v. School District of University City, supra, is applicable here. We there held that the violation of similar restrictions was an unlawful appropriation of property in the nature of an easement belonging to adjoining owners and that the school district could only acquire the right to build contrary thereto by condemnation. [See also State ex rel. Britton v. Mulloy, 332 Mo. 1107, 61 S. W. (2d) 741; Peters v. Buckner, 288 Mo. 618, 232 S. W. 1024; 14 Am. Jur. 608, sec. 193; 26 C. J. S. 508, sec. 162.] In the Britton case, the restricted lots were reserved for offices and retail stores or places of business with the right of trustees to determine whether they should be used for the purposes for which they were reserved or for private residence purposes. It was further provided that ''The lots . . . in this section described shall not, however, be used for any purposes other than the purposes for which they are respectively reserved, or for private residence purposes as aforesaid, to which purposes they are hereby expressly restricted, into whosesoever hands they may come.'' [For these restrictions in full see Bub v. McFarland (Mo. App.), 196 S. W. 373.] Our decision in the Britton case, recognizes the right of property owners to specify the uses to which land may be put and their right to prevent use for any purpose not included. In other words, they may limit the land use to specified purposes, having done so they have a property right in the nature of an easement to keep use within the specified limits and the courts will enforce their rights as stated in their covenant.

We think the Britton case is controlling here. This original restriction was that buildings on these lots ''shall never be used or occupied for any purpose except for that of private residence.'' The 1928 amendment added to this the provision that they might be used for retail mercantile business and apartments. This made the restriction state that the buildings on these lots shall never be used for any purpose except for that of private residence, retail mercantile business and apartments. Defendants' use is not one of these specified uses and is, therefore, a use prohibited by the clause ''shall never be used or occupied for any purpose except'' the one originally stated and the two added.

■ Defendants invoke the rule of ejusdem generis, citing Noble v. Kisker, 134 Fla. 233, 183 So. 836, and point to the clauses (referring to buildings on the lots) "nor shall any part or portion thereof ever be used or occupied except solely as a residence; nor shall such building be arranged or ever used or occupied as flats"; and also to the final clause prohibiting the use of the *lots* or any portion thereof for trade, manufacture or business. However, we think the situation is very different from the Florida case, permitting a private school in a residential district. That case was ruled on the construction of the intent and purpose of the restrictions involved and the rule of ejusdem generis was invoked as an aid to such construction. We think that the restrictions involved herein (as first written and as modified) are made clear and unambiguous by the clause stating that the buildings on these lots "shall never be used or occupied for any purpose except" (for the three uses stated.) The above quoted clause concerning flats undoubtedly was used to make it plain that residence purposes did not include apartments or rooming houses. Likewise, the final provision concerning the use of the lots (where before the reference had been to buildings erected thereon) was to make it plain that no such prohibited use should be made of any *lot or portion* thereof, on which there was no building. The use of buildings erected thereon had been fully protected by the preceding provisions. We hold that the meaning of these restrictions (as first written and as modified) is not ambiguous, so that there is no room for application of the rule of ejusdem generis or other supplemental rules of construction; and that defendants' use is a prohibited use.

■ Certainly there was not sufficient acquiescence in the prior use of the building occupied by defendants, by the previous owners to constitute an abandonment of the restrictions or to provide a basis for estoppel against their enforcement. The evidence shows that these acts were sporadic and that there were protests by the property owners and their association which caused them to be discontinued. "Occasional and temporary violations by lot owners of a covenant forbidding the use of property for mercantile purposes are not sufficient as a matter of law to warrant a finding of a ■ waiver or abandonment of the right to enforce the restriction." [14 Am. Jur. 645, sec. 297, also secs. 295, 296 and 298; See also 26 C. J. S. 563, sec. 169; Pierce v. St. Louis Union Trust Co., 311 Mo. 262, 278 S. W. 398; Hall v. Koehler, 347 Mo. 658, 148 S. W. (2d) 489.] We hold that no basis for waiver or estoppel was shown.

■ On their constitutional questions defendants cite State ex rel. Roman Catholic Bishop v. Hill, 59 Nev. 231, 90 Pac. (2d) 217; State ex rel. Synod of Ohio v. Joseph, 139 Ohio St. 229, 39 N. E. (2d) 515; State ex rel. Westminster Presbyterian Church v. Edgecomb, 108 Neb. 859, 189 N. W. 617. These are cases of governmental restrictions under zoning laws. They are cases of arbitrary and unreasonable

action based on the police power of the state. The enforcement of private mutual covenants between property owners, imposing servitudes on land, is an entirely different matter, as the above cited Ohio case recognizes. (39 N. E. (2d) 1. c. 524.) Actually the shoe is on the other foot, because it is defendants who are seeking to take from the owners, without compensation, what is private property under our decisions. [See Sec. 28, Art. II, Const. of Mo. 1945.]

The judgment is affirmed. All concur except *Clark, J.*, absent.