**SCHNUCKS TWENTY–FIVE, INC., a corporation, Plaintiff-Respondent,**

v.

**Joseph BETTENDORF and Jay Bee Stores, Inc., a corporation, Defendants-Appellants.**

No. 40392.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 30, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 15, 1980.

Application to Transfer Denied
April 8, 1980.

Henry Fredericks, Stuart J. Radloff, Clayton, for defendants-appellants.

Mark R. Gale, Jerry D. Perryman, St. Louis, for plaintiff-respondent.

DOWD, Presiding Judge.

This is a case involving the construction of a covenant not to compete.

Appellants, Joseph Bettendorf and Jay Bee Stores, Inc. appeal from a judgment rendered by the Circuit Court of St. Louis County, favorable to respondent, Schnucks Twenty-Five, Inc. The action was instituted by the latter on November 7, 1975 when a petition for a temporary injunction was filed. The petition, which was amended to request a temporary restraining order and damages in addition to the desired injunctive relief, was filed on June 28, 1976.

Count I of the amended petition alleged that appellants' use of the name "Bettendorf" in connection with the grocery business within a 200 mile radius of St. Louis amounted to an appropriation of a property right belonging to respondent; that appellants had refused respondent's requests to discontinue use of the tradename; and that use of the name "Bettendorf" in the food business in the particular area described, caused irreparable injury to the respondent and its rights. Respondent prayed that appellants permanently be enjoined from using or advertising the name "Bettendorf" in connection with the manufacturing, distributing, or marketing of food items within a 200 mile radius of St. Louis. In Count II, respondent prayed for actual damages as well as punitive damages of $500,000 for conversion of respondent's property rights. In Count III, respondent prayed for actual damages and punitive damages of $500,000 for tortious interference with respondent's contract rights. In Count IV, which was filed August 26, 1977, respondent sought a declaratory judgment that appellants' use of the name "Jay Bee" or "JB" in advertising or identification was equivalent to the use of the name "Bettendorf". It contained the prayer that appellants be enjoined from further use of "phonetic facsimiles" of Bettendorf in connection with the grocery business in the greater St. Louis area.

The property right which Schnucks brought this action to defend is one which Schnucks acquired in its purchase of the assets of Allied Supermarkets, Inc. in September 1970. The latter, formerly ACF–Wrigley Stores, had purchased the stock of the Bettendorf grocery business pursuant to a contract executed January 15, 1958. Prior to the 1958 purchase, the Bettendorf name was well known in the grocery business in the metropolitan St. Louis area. By 1970, Allied operated 30 grocery stores bearing the name "Bettendorf". The trial court found that Allied had control of the "largest grocery store operation in the St. Louis metropolitan area."

The stock purchase agreement contained, *inter alia*, the following covenants:

"7. Covenants of the Seller

(L) The Seller will not directly or indirectly engage in the wholesale or retail food business within a radius of 200 miles of St. Louis, Missouri, for a period of ten years after the Closing Date; and will not at any time after the Closing Date directly or indirectly engage in such business or any business involving the manu-

facture, distribution or sale of food products within said area under the name Bettendorf, or any combination thereof."

In 1970, Allied sold the assets of 25 of its 30 St. Louis grocery stores to respondent. In an assignment dated October 12, 1970, Allied conveyed "all its rights, title and interest in and to the Bettendorf name, including, but not limited to its rights pursuant to paragraph 7(L) of the January, 1958 contract."

Following a trial to the court, relief was granted respondent on each count.[1] On Count I, appellants were permanently enjoined from using the names "Bettendorf", "Jay Bee", "JB" or any "combination thereof" in connection with the food industry within a 200 mile radius of St. Louis. On Counts II and III, appellants were ordered to pay respondent a total sum of $1.00 in actual damages. In Count IV the court reiterated the relief granted on Count I, and enjoined appellants from using the name "Jay Bee" apart from the context of its full corporated name: "Jay Bee Stores, Inc.".

Appellants contend that the trial court's judgment was erroneous in seven respects.

In their first assignment of error, appellants allege that the trial court erred in admitting into evidence a copy of a thermofax copy of the 1958 stock purchase agreement in violation of the best evidence rule.

The record reveals that neither party was able to locate an executed copy of the 1958 contract. A corporate officer of Allied Supermarkets, Inc. (ACF–Wrigley) was also unable to locate a copy of the contract. Respondent introduced a letter, dated January 14, 1958, signed by appellant, Joseph Bettendorf, in which it was stated that three copies of the executed contract were entrusted to Mr. Barksdale's possession. In hopes of locating the particular material, respondent twice sought to question Mr. Barksdale, the attorney who represented appellants in the drafting of the 1958

agreement. Such questioning was not effectuated because respondent's two subpoenaes were quashed on account of Mr. Barksdale's ill health.

Respondent also deposed Mr. James Deer, a New York lawyer, who represented Allied in the 1958 stock purchase. Mr. Deer stated that he was present when appellant, Joseph Bettendorf executed the three copies of the 1958 agreement. All three copies were deposited with Mr. Barksdale. Mr. Deer noted the names of those who had executed and notarized the agreement on his thermofax copy of the unexecuted agreement. When filing the requisite SEC forms, Mr. Deer had his copy of the contract retyped because of its poor visual quality. At the time he was deposed, Mr. Deer no longer had a copy of the agreement. When his deposition was taken, Mr. Deer identified respondent's exhibits of the SEC 8–K form and the SEC's reproduction as a copy of the 1958 agreement.

■ The best evidence rule does not preclude the introduction of secondary evidence; it merely embodies the law's preference of the best evidence capable of production. *Aviation Enterprises, Inc. v. Cline*, 395 S.W.2d 306, 308 (Mo.App.1965). A court may permit the introduction of secondary evidence if the offering party demonstrates that the primary evidence is "lost or destroyed, is outside the jurisdiction, is in the possession or control of an adversary, or is otherwise unavailable or inaccessible to him, or is voluminous or complicated." 29 Am.Jur.2d, Evidence, § 459 (1967). An offer of secondary evidence need not prove the unavailability or nonexistence of the primary evidence "beyond the possibility of mistake." *Western Inc. v. United States*, 234 F.2d 211, 213 (8th Cir. 1956).

■ Both parties were unsuccessful in locating a copy of the contract during the discovery stage. At the trial level, respondent demonstrated that they diligently had

---

[1] The order of judgment was stayed to allow appellants to exhaust their supply of grocery bags until May 1, 1978; decals, labels, signs and register tapes and tumblers until July 1, 1978; and office supplies until December 1, 1978. Appellants were permitted to continue use of a neon sign which bears the name, "Jay Bee".

exhausted all avenues in an attempt to produce the executed 1958 contract. Parties to the original agreement were contacted, and discovered to be unable to present a copy of it. The attorneys for both parties to the agreement were contacted, and the one who was capable of responding, was unable to produce a copy of the contract. The trial court did not err in finding that the respondent established that the signed copy of the original contract was unavailable.

■ In the second prong of their first assignment of error, appellants contend that respondent failed to establish the proper predicate for the introduction of the SEC document as secondary evidence.

We must note at the outset that a trial court possesses wide discretion in its determination of the sufficiency of a foundation for the introduction of secondary evidence. *Western,* supra at 213.

Respondent gave appellants the requisite notice of its intent to introduce secondary evidence, and the court found that the unavailability of the primary evidence had been established.

Before identifying the SEC copy of the 1958 contract, Mr. Deer testified in his deposition that he had participated in the drafting of the original agreement. He further stated that Mr. Barksdale had taken possession of the three copies "pursuant to an escrow understanding." As previously stated, Mr. Deer's copy was retyped for governmental filing purposes. Following his examination of the respondent's SEC form exhibit, Mr. Deer stated that it was a copy of the contract which appellant, Joseph Bettendorf had signed in his presence in 1958. Mr. Deer also testified that he no longer represented ACF–Wrigley. He personally searched his files in an attempt to locate a copy of the contract. He also stated that his law firm had a policy of disposing of noncurrent file material. We cannot say that the trial court abused its discretion in its admission of the secondary evidence.

■ In the third prong of their first assignment of error appellants contend the trial court erred in admitting into evidence certain statements and letters authorized by the appellants which were intended to prove the contents of the 1958 agreement. At the heart of this contention is the allegation that the admission of such parol evidence was improper because there existed better secondary evidence of the existence of the contract. Appellant, Joseph Bettendorf, did not specify, however, which of his statements had been admitted erroneously. The issue, therefore, has not been preserved for our review. *Thummel v. King,* 570 S.W.2d 679, 688 (Mo. banc 1978). Point one is ruled against the appellants.

■ In their second and fifth assignments of error, appellants contend that the trial court erred in characterizing the name "Bettendorf" as a species of property which was sold pursuant to the 1958 stock purchase agreement. Appellants opine that their promise not to engage in the grocery business under the Bettendorf appellation within a 200 mile radius of St. Louis may be properly categorized as a restrictive covenant rather than a property right capable of being converted. This classification is predicated on appellants' contention that since language of a grant is absent from paragraph 7(L) of the contract, the covenant is personal to the seller, and susceptible to interpretation according to contract principles.

Cases pronouncing the principle that a person has a right to use his or her surname as a corporate trade name are legion. 44 A.L.R.2d 1159 (1955). "[A] man's name is his own property, which he has the right to use and enjoy as he does any other species of property." *John T. Lloyd Laboratories, Inc. v. Lloyd Bros. Pharmacists, Inc.,* 131 F.2d 703, 707 (6th Cir. 1942). In the realm of unfair competition a trade name used in connection with a business may amount to a valuable asset and become in itself a property right. *Dutcher v. Harker,* 377 S.W.2d 140, 144 (Mo.App.1964); *Shrout v. Tines,* 260 S.W.2d 782, 788–789 (Mo.App.1953); *cf. Pan American Realty Corp. v. Forest Park Manor, Inc.,* 431 S.W.2d 144, 149 (Mo.1968). This right may be abridged as a result of contract or estoppel. *Dutcher v. Harker,* 377 S.W.2d 140, 143 (Mo.App.1964).

The evidence in this case indicates that the name "Bettendorf" was well known in the St. Louis area grocery business. As part of the consideration for the sale of the Bettendorf stock, appellant, Joseph Bettendorf, relinquished his right to use his name or any combination thereof in connection with the grocery business in the St. Louis area. There exists ample authority for construing such a covenant as effecting the transfer of a property right. *Brown Chemical Co. v. Meyer*, 139 U.S. 540, 547, 11 S.Ct. 625, 628, 35 L.Ed. 247 (1887); *P.H. Schneider Brewing Co. v. Century Distilling Co.*, 107 F.2d 699, 703 (10th Cir. 1939); *Hanna Mfg. Co. v. Hillerich & Bradsby Co.*, 78 F.2d 763, 766 (5th Cir. 1935).

Points two and five are ruled against the appellants.

In their third assignment of error, appellants allege that the covenant contained in paragraph 7(L) of the 1958 agreement was unenforceable because it was not restricted as to time, reasonable space or proper purpose.

In determining the enforceability of covenants not to compete which are ancillary to the sale of a business or employment contract, courts have resorted to a "reasonableness" standard. In this context, "reasonableness" has been interpreted as requiring a balancing of the countervailing interests of the promisor, the promisee, and the public good. Hinderer, *Covenants Not to Compete-Enforceability Under Missouri Law*, 41 Mo.Law Review 37, 40 (1976). Unlike the promisor in an employment contract, the promisor in the sale of a business has a superior bargaining position from which he may negotiate the best price for his covenant not to compete. The spatial and time limitations required in covenants not to compete accompanying the sale of a business are designed in part to protect the buyer from the seller's encroachment on the good will transferred in the sale. *Long v. Towl*, 42 Mo. 545, 549 (1868).

In the present case, appellants promised not to engage in the retail food business within a 200 mile radius of St. Louis, for ten years following the date of closing. Appellant, Joseph Bettendorf also promised that after the closing date he would not use the name Bettendorf or any combination thereof, in the grocery business in said area. Although appellants contend the covenant is void because it lacks a time limitation, the paragraph contains appellant's express promise not to compete with the buyer or his assigns for ten years. Noncompetition for such a duration has been upheld as reasonable. *United States Chemical Co. v. Provident Chemical Co.*, 64 F. 946, 950 (E.D.Mo.1894); *Hessel v. Hill*, 38 S.W.2d 490, 492 (Mo.App.1931); *Glover v. Shirley*, 169 Mo.App. 637, 155 S.W. 878, 879 (1913).

Appellants further contend that their promise not to use their name in the grocery business is unenforceable because it was not restricted to a specific time frame. We disagree.

A proprietor of a business may divest himself of the right to use his surname with relation to said business, by transferring such a right along with the concern's good will to a purchaser of the business. *Guth v. Guth Chocolate Co.*, 224 F. 932, 933 (4th Cir. 1915). This principle is qualified, however, by the fact that one's intention to divest himself of the right to use his surname in a particular field must be clearly demonstrated. *Dutcher v. Harker*, 377 S.W.2d 140, 144 (Mo.App.1964); *Hazelton Boiler Co. v. Hazelton Tripod Boiler Co.*, 142 Ill. 494, 508, 30 N.E. 339, 345 (1892).

As has been stated by Nims in his treatise on unfair competition:

"A person, if he wishes, may sell his name once and for all and exclude himself entirely from the use of it in such a way as to injure his vendee in any unfair way in the enjoyment of his purchase. This is not considered to be any unjust limitation of a person's right to the use of his own name. . . .

*Having excluded himself by agreement from the use of his name, if one uses his name in re-entering the same line of business, or makes any attempt to reclaim any of the business of the concern he has sold out, he will be competing unfairly.*"

(Emphasis added). H. Nims, Unfair Competition and Trademarks 59 (3rd. ed. 1909). *See also, Atlas Beverage Co. v. Minneapolis Brewing Co.*, .113 F.2d 672 (8th Cir. 1940); *Tuttle v. Blow*, 176 Mo. 158, 75 S.W. 617, 620 (1903); *Skinner v. Oakes*, 10 Mo.App. 45, 60 (1881).

Appellants unequivocally covenanted not to use their family name in the retail food market within a 200 mile radius of St. Louis. They may not now derogate from that grant. 2 R. Callman, Unfair Competition Trademark and Monopolies 632 (3rd. ed. 1969).

In the second prong of their third assignment of error, appellants contend the covenant is unenforceable because the territorial limitation exceeds that which was necessary to protect the vendee's interests. Similar to our consideration of the time limitation, our review of the reasonableness of the spatial restriction requires a balancing of the conflicting interests of the covenantor, covenantee and the public.

The inclusion of a territorial limitation in a covenant not to compete was designed to protect the vulnerable business interest of the covenantee. If the spatial limitation is found to be reasonable for the covenantee, it is usually found to be reasonable visàvis the public. In this regard it also has been noted that "the claim of hardship on the part of the promisor, he having received the consideration stipulated in the contract for his promise not to compete with the covenantee, will have but little appeal to the court, and there are very few cases in which the question of reasonableness as to the covenantor has been raised at all." 46 A.L. R.2d 151 (1955). *See also, State v. Kelly*, 408 S.W.2d 383, 393 (Mo.App.1966); *Kreger Glass Co. v. Kreger*, 49 S.W.2d 260, 264 (Mo.App.1932); *Angelica Jacket Co. v. Angelica*, 121 Mo.App. 226, 98 S.W. 805, 809 (Mo.App.1906).

As previously mentioned in this opinion, appellants promised not to engage in the retail food business for ten years within a 200 mile radius of St. Louis. At the time of the 1958 sale, appellants owned nine grocery stores. The stores were located in the following areas: Kirkwood, Maplewood, Webster, South St. Louis on Grand Avenue, North St. Louis, Clayton at Clayton Road and Hanley, Hampton and Village Market, Lafayette, and Gravois and Loughborough. When respondent purchased the Allied assets in 1970, there existed 25 stores operating under the Bettendorf appellation in the St. Louis area.

While the scope of the territorial limitation is usually restricted to the area in which the promisee has business concerns, cases have recognized the reasonableness of restrictions which encompass areas in which the covenantee may be expected to expand his business. *Crooper v. Davis*, 243 F. 310, 315 (8th Cir. 1917); *Prame v. Ferrell*, 166 F. 702, 705 (6th Cir.), *cert. denied* 215 U.S. 605, 30 S.Ct. 406, 54 L.Ed. 345 (1909). A restrictive covenant of this type will be upheld if the area to which it refers is not larger than that reasonably necessary to protect the covenantee. *Chemical Fireproofing Corp. v. Bronska*, 542 S.W.2d 74, 79 (Mo.App. 1976); *Weaver v. Jordon*, 362 S.W.2d 66, 73 (Mo.App.1962); *Kreger Glass Co. v. Kreger*, 49 S.W.2d 260, 264 (Mo.App.1932).

We are of the opinion that this particular spatial limitation is not unenforceable as a restraint of trade. It has not operated to stifle competition in the retail food business in the St. Louis area. Appellants received $7,608,807 for their sale of stock and accompanying covenants not to compete with the buyer and its assigns. They may not now be permitted to deprive the purchaser's assigns from the fruits of the contract. *Kreger Glass Co. v. Kreger*, 49 S.W.2d 260, 264 (Mo.App.1932).

In the third prong of their third assignment of error, appellants contend that respondent has abandoned its interest in the name "Bettendorf". At the time Schnuck's purchased the assets of 25 Allied stores, the former was operating 20 grocery stores under the denomination "Schnucks". Following the purchase from Allied, respondent highlighted the acquisition by advertising the grocery stores as "Schnuckendorfs". In apparent response to this adver-

tising campaign, appellants forwarded the following message to the corporate respondent's president:

"Your recent ads in our metropolitan newspaper have caused my family and me considerable concern and some embarrassment over the alliteration which your ads have employed in the phrase 'what is a Schnuckendorf'? I have no doubt that this idea has been developed by an advertising company and that in so doing it has not given consideration to the rights which my family and I have to keeping our name free from ridicule or facetious use."

Shortly thereafter, the advertising campaign was terminated, and all of respondent's stores were identified as "Schnucks".

Appellants' contention that respondent abandoned its interest by discontinuing use of the name Bettendorf to identify its stores is without merit. The gist of appellants' promise in the 1958 agreement was that they would refrain from using their name in the retail food business. It may be inferred that the purpose of this covenant was to eliminate the use of the name "Bettendorf" and enable the buyer or its assigns to establish itself in the St. Louis area grocery business. *See, Durwood v. Dubinsky*, 361 S.W.2d 779, 794 (Mo.1962). Point three is ruled against the appellants.

In their fourth assignment of error, appellants contend that the trial court erred in concluding as a matter of law that Joseph Bettendorf's promise not to use the Bettendorf name and engage in the grocery business was susceptible to a unilateral assignment by the purchaser, Allied, to the respondent, Schnucks. Appellants' contention is predicated on the allegation that such a restrictive covenant relating to personal services is not assignable without the approval of the covenantor and would require an inquiry into the "reasonableness" of the restrictions upon each assignment.

In paragraph 3 of its conclusions of law, the trial court stated, "The right to use his name in the food business within 200 miles of St. Louis so sold by defendant Joseph Bettendorf, to Allied Supermarkets, Inc. in January 1958, was assignable to Allied Supermarkets, Inc., incident to any sale by it of the said business."

■ A vendor's covenant not to engage in a similar business, which is found to be reasonable in duration, space and purpose, and which is assignable by its terms, may be enforced by one who purchases from the vendee. *Scotton v. Wright*, 13 Del.Ch. 214, 219, 117 A. 131, 134 (1922). Such covenants have been held not to be personal, but to be "incident to the property which . . . had (been) parted with and the business also." *Sickles v. Lauman*, 169 N.W. 670, 672 (Iowa 1918); 4 A.L.R. 1073–1074 (1919).

■ The 1958 agreement contained the following clause in paragraph 19:

"Parties Bound. This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the Seller and the Purchaser."

As we have upheld the reasonableness of the time, territorial and purpose restrictions, we also find that the contract contains the requisite language of assignability. We conclude that the trial court did not err in respect to its conclusions of law regarding the contract's assignability. Point four is ruled against the appellants.

■ In their sixth assignment of error appellants allege that the trial court erred in enjoining them from using their surname or "Jay Bee" or "J.B." because respondent failed to demonstrate that it had or would suffer irreparable harm in the absence of injunctive relief.

Appellants erroneously equate irreparable harm with actual damages. Respondent concedes that actual damages are not possible to ascertain in this case. Appellants err, however, in using this concession as evidence to support their claim that respondent suffered no harm. The evidence presented by the respondent is sufficient to sustain a finding that the appellants breached the agreement and that the resulting damages to respondent are speculative. These facts, in themselves are ade-

quate to show irreparable harm. *Matthews v. First Christian Church of St. Louis,* 355 Mo. 627, 197 S.W.2d 617, 619 (Mo.1946); *Mills v. Murray,* 472 S.W.2d 6, 18 (Mo.App. 1971); *Renwood Food Products v. Schaefer,* 240 Mo.App. 939, 223 S.W.2d 144, 152 (Mo. App.1949).

Respondent is merely seeking to have the covenant given by appellants not to use their name in the grocery business enforced by way of injunction. The original purpose of the covenant was to avoid damage to the respondent and he will not be denied his remedy because his damages are not ascertainable. *Durwood v. Dubinsky,* 361 S.W.2d 779, 795 (Mo.1962); *Long v. Huffman,* 557 S.W.2d 911, 914 (Mo.App.1977); *Missouri Fed. of the Blind v. National Fed. of the Blind of Missouri,* 505 S.W.2d 1, 6 (Mo.App.1974).

Appellants contend the issuance of the injunction was also erroneous because this lawsuit allegedly was brought to assert a "technical right". This allegation stems from the fact that respondent's president, Donald Schnuck, testified in his deposition that this action was instituted as a matter of principle, to protect the corporation's property rights. At the trial, however, Mr. Schnuck clarified this statement by explaining that the infringement issue was a matter of economics as well as one of principle. Appellants' contention in this regard, therefore, is not supported by the evidence.

Finding no error in either of the respects cited, point five is ruled against the appellant.

In their seventh assignment of error, appellants allege that the trial court erred in construing the combinations "Jay Bee" and "J.B." as violating appellant, Joseph Bettendorf's covenant not to use his surname because the "restrictive covenant" only prohibited appellants from using the name "Bettendorf".

The trial court concluded as a matter of law that appellants' use of "J.B." and "Jay Bee" in its radio advertising of its grocery stores in the St. Louis area amounted to "use and combination of the name 'Bettendorf' and constituted a wrongful taking of respondent's property rights". In the 1958 agreement appellants expressly covenanted not to engage in the retail food business "under the name Bettendorf or any combination thereof".

We have listened to the tape of the radio advertisements, and agree with the trial court's finding in this regard. The tape contained three radio spots for JB Liberty Stores in which a stock boy, meat buyer and produce buyer describe the demands expected by their boss, Joe Bettendorf. All three advertisements have the same closing statement, "If Joe Bettendorf puts his initials on something, it better be right".

The inference to be drawn from the advertisements is that the initials J.B. or Jay Bee represent Joseph Bettendorf's ownership or affiliation with the grocery stores mentioned. Appellants' use of the surname and combination thereof in this manner clearly constitute a breach of the 1958 covenant.

In the final segment of their seventh assignment of error, appellants contend that while Joseph Bettendorf as an individual, may be bound by the covenant contained in paragraph 7(L), the corporate appellant is not bound by the promise not to utilize the Bettendorf surname. We disagree.

The 1958 agreement described Joseph Bettendorf, an individual as a seller of the stock of Bettendorf's, Inc. As an individual, appellant covenanted not to compete under his surname in the St. Louis area retail food business. (*Cf. Northern Propane Gas Co. v. Cole,* 395 F.2d 1, 3 (5th Cir. 1968).)

One who is a party to a covenant not to compete may be restrained by that agreement, but only if they work in concert with the covenantor. *Wahlgren v. Bausch & Lomb Optical Co.,* 68 F.2d 660, 664 (7th Cir.), *cert. denied* 292 U.S. 639, 78 L.Ed. 1491, 54 S.Ct. 774 (1934). This premise is applicable to corporations also. The court in *H. G. Fenton Material Co. v. Challet,* 49 Cal.App.2d 410, 121 P.2d 788, 791 (1942) stated:

"Ordinarily . . . the corporation should not be enjoined from conducting a business independently of the covenanter (sic), unless the circumstances are such

that the corporation is to be regarded as the alter ego of the covenanter (sic) or a mere instrumentality by means of which the covenanter (sic) seeks to evade the agreement."

The language of the latter phrase applies to this case. In its findings of fact, the trial court found that appellant, Joseph Bettendorf was responsible for the organization of the corporate defendant and was an officer, director, and owner of between 95% and 98% of the latter's stock. The court further found that the corporate defendant was "acting directly or indirectly and in concert with, and by and under the control and direction of Joseph Bettendorf in using the name 'Bettendorf' in the St. Louis area grocery business."

Joseph Bettendorf will not be permitted to utilize the corporate defendant to evade his obligations under the 1958 agreement. Point seven is ruled against the appellants.

The judgment of the trial court is affirmed.

SATZ, J., and ALDEN A. STOCKARD, Special Judge, concur.