Edward J. OTTO, d.b.a. Otto's Associates Engineers & Land Surveyors, Inc., Respondent,

v.

Marty J. WEBER, d.b.a. M.J. Weber, Inc., Appellant.

No. C0–85–1247.

Court of Appeals of Minnesota.

Jan. 14, 1986.

Thomas P. Lilja, Buffalo, for respondent.

Phillip R. Krass, Krass, Meyer & Walsten, Shakopee, for appellant.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

Marty J. Weber appeals from a permanent injunction restraining him from competing in the land surveying business with respondent Otto Associates Engineers & Land Surveyors, Inc. We reverse.

## FACTS

This case presents the issue whether a covenant not to compete contained in a buy-out agreement between two closely held corporations is personally binding on the individual who signed the agreement as president of his corporation.

In 1977 Marty Weber incorporated his land surveying business as M.J. Weber, Inc. Marty Weber and his wife, Diane Weber, were president and vice president, respectively, and the only shareholders. On July 22, 1983, immediately before Weber and his family moved to Colorado, he sold the corporation's assets to Otto Associates Engineers & Land Surveyors, Inc. (Otto, Inc.). Edward Otto and Wendy Otto are the only officers and shareholders of their corporation.

The sales contract designated M.J. Weber, Inc., as the seller and Otto, Inc., as the buyer. It provided that the buyer would pay $26,000 for equipment and work then under contract. The buyer agreed to pay 7 percent of the fees received from the seller's established clients for a period of two years. The seller was also to supply a list of "preferred clients" and to allow the buyer to use his telephone number, advertising, and corporate name for purposes of identifying the buyer's name with the seller's. The agreement specifically provides that the buyer was not purchasing the corporation itself or the accounts receivable. Finally, the seller agreed not to compete within a 100-mile radius of Buffalo, Minnesota, for a period of five years. The agreement was signed by Marty Weber and Edward Otto as presidents of their respective corporations.

There was much testimony at trial about how the contract was formed. Weber called Otto when a sales agreement with someone else fell through at the last minute. At the first meeting Otto and his wife, Wendy, went to the Webers' home with proposals for the sale. Three to four

days later the Ottos brought the Webers a purchase option agreement containing essentially the same terms as the later sales agreement. Otto testified that it was solely his decision to make the option agreement between the two corporations and to caption the signatures in the parties' corporate capacities. The parties agree that there was little discussion of the non-compete clause, because Weber planned to remain in Colorado. Weber and Otto signed the option agreement as presidents of their corporations.

Otto then brought the signed option agreement to his attorney and directed the attorney to draft a sales agreement incorporating those terms. Otto specifically directed the attorney to write the non-compete convenant in corporate rather than personal form. The attorney drafted the agreement as directed, adding only a clause in which the seller agreed to indemnify the buyer for outstanding claims or obligations as of the closing date. The parties signed the sales agreement, again as presidents of their respective corporations. Otto prepared a bill of sale between the two corporations containing a list of the assets included in the sale.

The parties agreed that in addition to the sales agreement there was a verbal contract between Weber and Otto *personally* that Weber would be paid for completed work on certain projects. Within a few days, Weber moved to Colorado.

Weber returned to Minnesota in January 1985 and began working as a land surveyor within a 100-mile radius of Buffalo. Otto brought suit, asking for a permanent injunction to enforce the non-compete clause. Weber counterclaimed, asking that Otto be enjoined from using the name M.J. Weber, Inc. The trial court issued a temporary injunction on February 22, 1985, which restrained M.J. Weber, Inc., from competing against Otto, Inc. On February 27 M.J.

Weber, Inc., was voluntarily dissolved. Weber subsequently amended his counterclaim and asked that Otto be enjoined from using the name Martin J. Weber for any purpose. On June 11, 1985, the trial court permanently enjoined Marty Weber individually from competing with Otto, Inc., within the agreed-upon geographical area. The trial court did not rule on Weber's counterclaim. Weber appeals.

## ISSUE

Did the trial court abuse its discretion in permanently enjoining Marty Weber from competing with Otto, Inc., on the basis that he was personally bound by the non-compete clause?

## ANALYSIS

■ The trial court's order contains a finding that

Marty J. Weber is personally indistinguishable from the corporation M.J. Weber, Inc. herein and thus, subject to the covenant not to compete contained in the Agreement between the parties herein, and any other result would be fundamentally unfair to the plaintiff.

The trial court's memorandum indicates that the court "pierced the corporate veil" to restrain Marty J. Weber personally because otherwise the non-compete covenant would be "totally ineffective and meaningless." Nothing in the record would support a finding that Weber's corporation was operated fraudulently or in an unjust manner, a finding which would be necessary to hold Weber personally liable on a corporate pierce theory. *See West Concord Conservation Club, Inc. v. Chilson,* 306 N.W.2d 893, 898 n. 3 (Minn.1981).[1]

■ Neither can the result be reached based on a contract "interpretation," because there is no ambiguity to interpret in

1. The situation here is different from one in which an individual personally agrees not to compete and seeks to evade that agreement through use of a corporation. *See, e.g., Schnucks Twenty-Five, Inc. v. Bettendorf,* 595 S.W.2d 279 (Mo.App.1979); *H.G. Fenton Material Co. v. Challet,* 49 Cal.App.2d 410, 121 P.2d 788 (1942); *Knudsen v. Sanitary Dairy Co.,* 270 Mich. 650, 259 N.W. 160 (1935); *Wahlgren v. Bausch & Lomb Optical Co.,* 68 F.2d 660 (7th Cir.1934). Otto, as the drafter of the agreement, purposely structured the agreement in corporate terms.

the contract. In *Northern Propane Gas Co. v. Cole*, 395 F.2d 1 (5th Cir.1968), the court was faced with a virtually identical factual situation. A contract for the sale of assets, which identified the buyer and seller as the two corporations involved, contained a clause in which the seller agreed not to compete against the buyer, and was signed by the presidents of the respective corporations. When the seller's president (and sole stockholder) began competing within the proscribed territorial limits, the buyer sued, claiming the seller's president was personally bound by the covenant. The fifth circuit affirmed a grant of summary judgment for the seller's president on the ground that he was not bound by the covenant as a matter of law.[2] Even if an ambiguity were found, it would be construed against Otto, the drafter of the agreement.

■ What the trial court effectively did was to reform the sales agreement to bind Weber personally to the non-compete covenant. Reformation requires clear and convincing evidence that the written agreement does not reflect the real agreement made by the parties and that this failure was due to either mutual mistake or a unilateral mistake accompanied by fraud or inequitable conduct by the other party. *See Nichols v. Shelard National Bank*, 294 N.W.2d 730, 734 (Minn.1980). Absent ambiguity, fraud, or misrepresentation, a mistake of one of the parties alone is not a ground for reformation. *See id.*

■ The record shows that Otto drafted the contract and purposely structured the agreement between the two corporations. He sought the advice of friends, business associates, and a lawyer on how to structure the purchase. In fact, he directed the lawyer to write the non-compete covenant in corporate rather than personal form.

Otto recognized the significance of corporate status because he operated his business as a corporation and specifically testified that he had no desire to purchase M.J. Weber, Inc. In addition, he acknowledged that he had a separate contract with Weber personally to cover payments received for work Weber had already completed. He testified that he wanted to buy the equipment, the clientele, and the right to use Weber's corporate name. The only evidence to the contrary is Otto's assertion at trial that he intended to bind Weber personally.

The trial court made no finding that the parties' agreement was different from that expressed in the written contract, but based the reformation on the equities as the court perceived them. This is an insufficient basis for reformation. Furthermore, the equities appear to be equally balanced. Otto, Inc., purchased the assets of M.J. Weber, Inc., for an undisputedly fair price and obtained the preferred client list and the right to use M.J. Weber, Inc.'s name in advertising. In addition, Otto obtained an agreement that M.J. Weber, Inc., cannot compete against him within the 100-mile radius for five years. There was no overreaching by Weber either in the formation of the contract or the dissolution of Weber's corporation; Weber is merely holding Otto to the terms of the contract Otto drafted.

■ Even if the trial court had made findings to support reformation, there is hardly the clear and convincing evidence necessary to support them in this record. Weber is not personally bound by the covenant. Therefore, the trial court abused its discretion in permanently enjoining him from competing in the land surveying business under the terms of the covenant.

2. *Compare* the non-compete covenant enforced in *B & Y Metal Painting, Inc. v. Ball*, 279 N.W.2d 813 (Minn.1979):

For a period of three years from the date of the termination of his employment with B & Y METAL PAINTING, INC., Delphus H. Ball, individually, a partnership with others, or in a corporation either existing or to be formed, will not within One Hundred (100) miles of the Village of New Brighton * * * directly or indirectly own, manage, operate, jointly control or be employed or participate in ownership, management, operation or control of, or be connected in any manner with any business of the type and character of the business engaged in by B & Y METAL PAINTING, INC. * * *.

279 N.W.2d at 815 n. 2.

Weber's counterclaim asked that Otto be enjoined from using the name "Marty J. Weber" in advertising. The trial court did not address this issue. There was little evidence that Otto was using Weber's personal rather than corporate name. Because Weber failed to show the inadequacy of his legal remedy or the need to prevent irreparable injury, the trial court's failure to address his counterclaim was not an abuse of discretion.

### DECISION

The non-compete clause in a contract for the sale of business assets between corporations does not personally bind appellant, who signed the contract as president of his corporation.

Reversed.