**CONGREGATION TEMPLE ISRAEL, a Corporation, Plaintiff-Respondent,**

**v.**

**CITY OF CREVE COEUR, a Municipal Corporation, James P. Wilson, Mayor of City of Creve Coeur, Missouri, Francis A. Casserly, John McVicker, Edward Wirt and Leo Reuther, Members of Board of Aldermen, City of Creve Coeur, Missouri, and Milton Johnson, City Clerk, City of Creve Coeur, Missouri, Defendants-Appellants.**

No. 46597.

Supreme Court of Missouri,

Division No. 1.

Jan. 12, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied Feb. 9, 1959.

———◆———

William H. Wyne, Jr., Clayton, and Roberts P. Elam, St. Louis, for appellants.

Lewis, Rice, Tucker, Allen & Chubb, James A. Singer, J. L. Pierson, Jerome W. Sandweiss, Samuel H. Liberman, St. Louis, for respondent.

Leo Pfeffer, New York City, Echeal T. Feinstein, Irl B. Baris, St. Louis, Benjamin W. Mintz, of counsel, for the American Jewish Congress, St. Louis Council, and the St. Louis Rabbinical Association.

John Raeburn Green and Lewis C. Green, St. Louis, for Metropolitan Church Federation of Greater St. Louis, amicus curiae.

Bernard J. Huger, Walter H. Pollmann, St. Louis, for Joseph E. Ritter, Archbishop of St. Louis.

HYDE, Presiding Judge.

Declaratory judgment action seeking a declaration that certain ordinances of the City of Creve Coeur were void (under which plaintiff was refused a permit to build a temple on its property); and asking that defendants be enjoined from enforcing these ordinances against plaintiff and from interfering with plaintiff in the use of its property for constructing a building to use for religious worship, Sunday School and

452

other church purposes. The court entered a decree for plaintiff granting the relief sought and defendants have appealed.

Creve Coeur is one of the many cities of St. Louis County. In 1951, the City enacted a comprehensive zoning ordinance (No. 17) dividing the City into six use districts; A, B, C and D were single family dwelling districts, with lot sizes of one acre in A, 20,000 feet in B, 15,000 feet in C, and 7,500 feet in D; E was a multiple dwelling district and F was a commercial district. This original ordinance did not prohibit churches from being built in any district and as to the A district, among other matters, provided in Article IV:

"Section 2. Use Regulations: Except as otherwise provided, business and industry are specifically prohibited, and a building or premises shall be used only for the following purposes:

"1. Single Family Dwellings.

"2. Churches, but only when off-street parking space is provided upon the lot or within one hundred (100) feet thereof, which space is adequate to accommodate one (1) car for every eight (8) persons for which seating is provided in the main auditorium of the Church and exclusive of the seating capacity of Sunday School and other special rooms."

Article IV, Section 2, also permitted in the A -district public and private schools, golf courses, private clubs, public parks and playgrounds, hospitals and institutions with certain provisions for size of site and parking space. On April 28, 1954, plaintiff made a contract to purchase from its owner a 23.66 acre tract, located in the A district of Creve Coeur. On June 1, 1954, the deed conveying this land to plaintiff was executed and recorded; and at that time no change in the zoning ordinance had been made. However, on May 12, 1954, a petition was presented at a meeting of the Board of Aldermen requesting amendment of the zoning ordinance. Thereafter, at a special zoning commission meeting, a public hearing was asked for on the petition requesting

amendment; and publication of notice of a public hearing, to be held June 2, 1954, was made. A public hearing was held on that date, and amending ordinances were prepared. On June 23 another public hearing was held on proposed amending ordinances 104 and 105, and after this hearing these ordinances were adopted by the Board on that same date.

Ordinance 104 repealed all authorization for churches in any district in the City. Authorization for schools, public or private, golf courses, private clubs, public parks and playgrounds, and hospitals and institutions, was also repealed. Ordinance 105 provided that on written application for any of these uses the application should be forwarded to the City Zoning and Planning Commission "whose duty it shall be to promptly investigate, consider and make written report thereon to the Board of Aldermen." This ordinance futher provided that a public hearing was required to be held; and that "after report by the City Zoning and Planning Commission, and after such public hearing, and subject to such protective restriction as it may deem necessary to protect the character of the surrounding property, the public health and the public welfare, the Board of Aldermen may issue a special permit authorizing the location, erection, reconstruction or structural alteration of any of the following land uses or structures in any district from which they are prohibited by this Ordinance; provided, however, in case of a protest against the granting of said application duly signed and acknowledged by the owners of ten (10) per cent or more of the area of the property located within an area determined by lines drawn parallel to and 1000 feet distant from the boundaries of the property sought to be devoted to such use, such permit shall not be issued except by the favorable vote of three-fourths of all the members of the Board of Aldermen." While this ordinance provides some standards for establishing protective restrictions when a permit is granted, it does not provide any standards for granting a permit as did the ordinance considered in State ex rel. Ludlow

v. Guffey, Mo.Sup., 306 S.W.2d 552, cited by defendants.

Plaintiff's land is at the intersection of Ladue Road and Spoede Road, in the southeastern part of the City, near Lindbergh Boulevard, which in this section is on the boundary line between the cities of Creve Coeur and Ladue. On the east side of Lindbergh in Ladue are the Country Day School and the Mary Institute. Chaminade College is on the west side of Lindbergh south of Ladue Road in the southeast corner of Creve Coeur; and there is a church north of the College. The area adjoining plaintiff's land is correctly described by defendants, as follows: Ladue Road, which runs east and west, has a right-of-way 60 feet wide, and is paved with concrete 20 feet wide, while Spoede Road, which runs north and south, has a two-lane blacktop pavement. On Ladue Road, immediately east of plaintiff's tract, is located the Ranken-Jordan Home, a small institution for crippled children which existed there prior to the incorporation of the City, and is a nonconforming use under the comprehensive zoning ordinance. A portion of plaintiff's tract extends behind the Ranken-Jordan Home, and is bounded on the east by the Krey estate, consisting of a large home on a large tract of grounds, and by Country Fair Acres, a recent subdivision of one-half acre lots. Plaintiff's tract is bounded on the north by a subdivision known as Chilton Acres. To the west of plaintiff's tract, across Spoede Road and on the northwest corner of the intersection of that road with Ladue Road, is a six-pump Phillips 66 Service Station, also in existence prior to the incorporation of the City, and a nonconforming use under the zoning ordinance. North of this service station, along the west side of Spoede Road, are homes consistent with the others in the area. South of Ladue Road, across from plaintiff's tract and east of Spoede Road, is a large tract (about 15 acres) vacant except for a frame residence facing on Spoede Road. On the southwest corner of the intersection of Spoede and Ladue Roads, is a large subdivision of fine homes, known as Oak Park Estates. All of the area adjoining and surrounding plaintiff's tract, with the exception of Country Fair Acres which is in the B district, is in the A district under the zoning ordinances.

Plaintiff's congregation had 1340 members but only the head of a household was considered as a member. The temple was planned with a maximum seating capacity in the sanctuary of 1500 expected to be filled only on the two high holy days. Average weekly attendance was estimated at 200 to 300. There would be regular religious services weekly at 8:15 P.M. on Friday and 10:30 A.M. on Saturday (children's services for Sunday School) with special services for the five major Jewish festivals. Plaintiff's present temple is in the City of St. Louis but about 80 per cent of its members live in St. Louis County.

Plaintiff made an application which was denied, only one member of the Board of five being in favor of it. Plaintiff thereafter brought this suit and contends that these ordinances violate the First Amendment of the Constitution of the United States as applied to the states by the Fourteenth Amendment and also Sections 5, 7 and 10 of Article I of the Constitution of Missouri, V.A.M.S., claiming them to be laws prohibiting the free exercise of religion; that they violate the Fourteenth Amendment and Sections 10 and 13 of Article I of the Missouri Constitution because they lack adequate standards for issuance or denial of special permits, provide for unconstitutional delegation of legislative powers to adjoining landowners, violate the prohibition against ex post facto laws and laws retrospective in their operation, authorize the passage of special laws, and unlawfully discriminate against plaintiff in violation of the equal protection clause. Plaintiff further contends these ordinances are void because they fail to conform to and are not authorized by the Missouri enabling act authorizing zoning (Sections 89.-010–89.140; statutory references are to RSMo and V.A.M.S.) saying there is no authority in the act for special permits, they

were not adopted as a part of a comprehensive plan, and they fail to conform to the required purposes specified in the act, meet its requirement of uniformity or conform to its procedural requirements. Because of the view we take, it is not necessary to discuss all of these contentions.

■ This is true because we think this case comes within our ruling in State ex rel. St. Louis Union Trust Co. v. Ferriss, Mo.Sup., 304 S.W.2d 896, concerning the scope of the enabling act providing authority for zoning by cities. Section 89.020 provides: "For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of all incorporated cities, towns and villages is hereby empowered to regulate and restrict the height, number of stories, and · size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, *and the location and use of buildings, structures and land for trade, industry, residence or other purposes.*" (Emphasis ours.) The italicized part of this section was construed in the Ferriss case (304 S.W.2d loc. cit. 900), under the rule of ejusdem generis, as negating "implied authority to control the location of schools or other public buildings, because 'trade', 'industry' and 'residence'' relate to private property only and the phrase 'other purposes' is not to be broadened to include a public use of property by the state in carrying out its constitutional mandate to establish and maintain free public schools." *This ruling was in part based on our constitutional provision* (Article IX, Section 1(a), that "the general assembly shall establish and maintain free public schools," and the statutes (165.100 and 165.370) enacted pursuant thereto, which would be nullified in part if the right to locate schools could be restricted by zoning ordinances. Clearly ordinances 104 and 105 are void, under this decision, insofar as they require a special permit for the location of schools. We think this is also true as to churches. Certainly churches do not come within the classification of trade, industry, residence or other similar purposes. See State ex rel. Howell v. Meador, 109 W.Va. 368, 154 S.E. 876. Furthermore, freedom of religion is one of the fundamental freedoms protected by the Bill of Rights, of both our federal and state constitutions. The provision of the First Amendment that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof" has been made applicable to the states by the Fourteenth Amendment. (Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213; Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292.) This is a stronger constitutional provision than that in our constitution concerning public schools and, in view of its absolute prohibition, we do not believe our legislature in using the language it did, in Section 89.020, had any intention of granting authority to municipalities to restrict location and use of buildings and land for churches. It certainly has not specifically stated any such authority as there is no mention of religious or church purposes either in the Act or its title. Therefore, the phrase "other purposes", as used in this context, should not be broadened by construction to include use of property for religious purposes by religious organizations whose rights to free exercise of religion are protected by such constitutional guaranties. Plaintiff and amici curiae cite many cases holding invalid zoning ordinances which have excluded churches or religious schools from residential districts, where no question of authority under an enabling act was raised. See Ellsworth v. Gercke, 62 Ariz. 198, 156 P.2d 242; Roman Catholic Welfare Corporation of San Francisco v. City of Piedmont, 45 Cal. 325, 289 P.2d 438; Catholic Bishop of Chicago v. Kingery, 371 Ill. 257, 20 N.E.2d 583; Board of Zoning Appeals of Decatur v. Decatur, Indiana Co. of Jehovah's Witnesses, 233 Ind. 83, 117 N.E.2d 115; Mooney v. Village of Orchard Lake, 333 Mich. 389, 53 N.W.2d 308; State ex rel. Roman Catholic Bishop of Reno v. Hill, 59 Nev. 231, 90 P.2d 217;

Diocese of Rochester v. Planning Board of Town of Brighton, 1 N.Y.2d 508, 154 N.Y.S. 2d 849, 136 N.E.2d 827; State ex rel. Synod of Ohio of United Lutheran Church in America v. Joseph, 139 Ohio St. 229, 39 N.E. 2d 515, 138 A.L.R. 1274; Young Israel Organization of Cleveland v. Dworkin, 105 Ohio App. 89, 133 N.E.2d 174; State ex rel. Anshe Chesed Congregation v. Bruggemeier, 97 Ohio App. 67, 115 N.E.2d 65; Roman Catholic Archbishop of Diocese of Oregon v. Baker, 140 Or. 600, 15 P.2d 391; In re O'Hara's Appeal, 389 Pa. 35, 131 A.2d 587; City of Sherman v. Simms, 143 Tex. 115, 183 S.W.2d 415; Congregation Committee, North Fort Worth Congregation, Jehovah's Witnesses v. City Council of Haltom City, Tex.Civ.App., 287 S.W.2d 700; State ex rel. Wenatchee Congregation of Jehovah's Witnesses v. City of Wenatchee, 50 Wash.2d 378, 312 P.2d 195; see also Annotation, 138 A.L.R. 1287; Churches and Zoning, 70 Harvard Law Review 1428; Zoning Laws and the Church, 27 St. John's Law Review 93. There are cases to the contrary such as Corporation of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. City of Porterville, 90 Cal.App.2d 656, 203 P.2d 823; City of Chico v. First Ave. Baptist Church, 108 Cal.App. 2d 297, 238 P.2d 587; West Hartford Methodist Church v. Zoning Board of Appeals, 143 Conn. 263, 121 A.2d 640; Miami Beach United Lutheran Church of the Epiphany v. City of Miami Beach, Fla., 82 So.2d 880; Galfas v. Ailor, 81 Ga.App. 13, 57 S.E.2d 834; Housing Authority of Gallatin County v. Church of God, 401 Ill. 100, 81 N.E.2d 500. However, the United States Supreme Court has not yet passed upon the application of the First and Fourteenth Amendments to an ordinance excluding a church from a residential area. (But see Kunz v. People of State of New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280, holding invalid an ordinance requiring a permit to hold religious meetings on the streets, with no mention of the reasons for which such a permit could be refused.)

It is said in Bassett on Zoning, 1940, page 70: "When in 1916 the framers of the Greater New York building zone resolution were discussing what buildings and uses should be excluded from residence districts, it did not occur to them that there was the remotest possibility that churches, schools, and hospitals could properly be excluded from any districts. They considered that these concomitants of civilized residential life had a proper place in the best and most open localities." The author states the reasons why churches and schools were located in residence districts (near those who attend, open spaces available with good light and air, quiet locations, and their intimate connection with home life) and also states on page 200: "Practically all zoning ordinances allow churches in all residence districts. It would be unreasonable to force them into business districts where there is noise and where land values are high, or into dense residence districts (in cities which have established several kinds of such districts). Some people claim that the numerous churchgoers crowd the street, that their automobiles line the curbs, and that the music and preaching disturb the neighbors. Communities that are too sensitive to welcome churches should protect themselves by private restrictions." (See also Yokley, Zoning Law and Practice, Section 222; Rathkopf, The Law of Zoning and Planning, Vol. I, Chapter 19, page 259; for cases of private restrictions see Matthews v. First Christian Church of St. Louis, 355 Mo. 627, 197 S.W.2d 617, and cases cited.) Our act authorizing zoning was enacted in 1925. Laws 1925, p. 307. In view of the usual and customary location of churches in residence districts and the strong constitutional provisions for freedom of religious worship, we do not think our legislature had any intention of authorizing the exclusion of either churches or schools from residence districts and believe that the reasonable construction of the language of Section 89.020, hereinabove italicized, which was also used in the title to the act, is as hereinabove indicated. Therefore, upon the authority of State ex rel. St. Louis Union Trust Co. v. Ferriss, supra, we hold there is no such authority

given to municipalities by our zoning act and ordinances 104 and 105 of the City of Creve Coeur are invalid as applied to both churches and schools.

Of course, as pointed out in the Ferriss case (304 S.W.2d loc. cit. 899), municipalities under the police power have the power of regulation of the facilities of public schools, and we hold the same thing is true of churches, such as safety of boilers, smokestacks and similar facilities (Kansas City v. School District of Kansas City, 356 Mo. 364, 201 S.W.2d 930), sanitation (Smith v. Board of Education of City of St. Louis, 359 Mo. 264, 221 S.W.2d 203), manner and type of construction for fire protection (Community Fire Protection District of St. Louis County v. Board of Education of Pattonville Consolidated School District R–3, Mo.App., 315 S.W.2d 873) and certainly likewise off-street parking facilities, sewage disposal and other matters related to the public health, safety and welfare. Plaintiff concedes the validity of such requirements, states its intention to comply and has made provisions in its plans for more than the required off-street parking. As held in Cantwell v. State of Connecticut, supra (60 S.Ct. loc. cit. 904), a case of solicitation of funds for religious purposes, "The state is likewise free to regulate the time and manner of solicitation generally, in the interest of public safety, peace, comfort or convenience. But to condition the solicitation of aid for the perpetuation of religious views or systems upon a license, the grant of which rests in the exercise of a determination by state authority as to what is a religious cause, is to lay a forbidden burden upon the exercise of liberty protected by the Constitution." (If it is believed to be necessary to regulate the location of churches, this is a matter for the legislature to provide with proper safeguards for the fundamental liberty of the free exercise of religion protected by the Constitution.) As stated, our conclusion is that the state by its zoning act has granted no authority to cities to prohibit building either churches or schools in residence

districts and that the trial court reached the right result in holding these ordinances void.

The judgment is affirmed.

All concur.

On Motion for Rehearing or to Transfer to the Court En Banc.

PER CURIAM.

Defendants contend that our decision in State ex rel. St. Louis Union Trust Co. v. Ferriss, Mo.Sup., 304 S.W.2d 896, 900, "did not depend upon a construction of the zoning enabling act (Chapter 89, Missouri Revised Statutes 1949 [V.A.M.S.]) and what was said in that case with respect to that Chapter, and particularly Section 89.020 of our statutes, was pure obiter dictum" and only "to the effect that the language of the enabling act negates implied authority to control the location of public schools or other public buildings." They say its true basis "was merely that the Missouri Constitution and statutes vested exclusively in the school districts of this state the power to select, locate and procure by condemnation, if necessary, sites for public schools."

However, we consider the Ferriss case to be a ruling that this enabling act, on which the relators therein relied, containing "no express grant of power to cities to regulate or restrict the location of schools or other public buildings" could not by construction of the clause, "location and use of buildings, structures and land for trade, industry, residence or other purposes" (in Sec. 89.020), be broadened "to include a public use of property by the state." Defendants have overlooked the statement we made therein, in citing the Ohio case concerning airports (304 S.W.2d loc. cit. 900), that it "reveals the wisdom of applying the rule of ejusdem generis in the instant case." Our conclusion was that neither this clause, nor the clause also relied on in Sec. 89.040, could reasonably be construed to vest the city with power

to regulate, restrict or prohibit schools. It is true we said, as one of the reasons for applying the rule of ejusdem generis, that the broad construction sought would conflict with other statutes authorizing school boards to select and procure school sites; and we also noted that this could interfere with the state's constitutional mandate to establish and maintain free public schools. Likewise, we think that such a construction of this language to include the authority to restrict or prohibit the use of land for religious or church purposes would make it possible to interfere with the free exercise of religion protected by the First and Fourteenth Amendments; and that this is a most persuasive reason for holding this clause must not be broadened by implication to include these uses not specifically stated therein. This tendency is certainly indicated by the ordinance, in this case, prohibiting churches from being built in any residence districts in the city without a special permit, for the granting of which no standards were provided, and also restricted by the desires of residents of the district.

This ruling does not mean, as defendants suggest, that it permits in all residential districts, cemeteries, hospitals, museums, lodge halls, club houses, libraries, private schools and many other types of institutional structures. Since a charge or other consideration is required for the services or facilities of such institutions, we do not think it would be unreasonable to say that they are similar purposes to "trade, industry, residence" and that this clause of the statute may be reasonably construed to include them, as we have done in City of Richmond Heights v. Richmond Heights Memorial Post Benevolent Ass'n, 358 Mo. 70, 213 S.W.2d 479, cited by defendants. Furthermore, the purposes of such institutions are not the exercise of the fundamental freedom of religious worship, protected by the strongest kind of constitutional guaranties, which is the principal basis for our ruling that the language of Sec. 89.020 should not be broadened by construction to include churches. Of course, some of these described institutional buildings might be public buildings erected by governmental authority (state or local) and thus be within the ruling of the Ferriss case. However, these questions are reserved for decision when and if presented in future cases. Defendants also cite Milwaukie Co. of Jehovah's Witnesses v. Mullen, Or., 330 P.2d 5, but the question herein ruled was not presented in that case.

However, as defendants point out, the trial court's decree ordered defendants "to forthwith issue or cause to be issued to the plaintiff a special use permit in accordance with the application heretofore filed by it." Since we have held the ordinance void, which required a special permit for plaintiff's use of its property for a building for religious purposes, no such permit as that ordinance required is necessary and therefore the decree of the trial court is modified by striking out the words hereinabove quoted.

The motion for rehearing or to transfer is overruled.