911 S.W.2d 697 (1995)
STATE of Missouri, ex rel., PRESBYTERIAN CHURCH OF WASHINGTON, MISSOURI, and Four County Mental Health Services, Inc., Plaintiffs/Respondents,
v.
CITY OF WASHINGTON, MISSOURI, Dolores Gersterkom, Bernie A. Hillemann, Kevin Hellmann, Al Nothum, Paul Kuenzel, Walter Larson, Richard Stratman, Theresa Steffens, Harold Unnerstall and Tim Brinker, Defendants/Appellants.
No. 67519.
Missouri Court of Appeals, Eastern District, Division Two.
December 12, 1995.
*698 Mark C. Piontek, Lewis, Rice & Fingersh, Washington, for appellant.
Sidney A. Thayer, Jr., Washington, for Presbyterian Church of Washington, Mo.
Steven Erich Ehlmann, St. Charles, for Four County Mental Health Services, Inc.
DOWD, Judge.
The City of Washington ("the City") appeals from the judgment of the circuit court *699 ordering the city council to grant Four County Mental Health Services, Inc.[1] ("Four County") a special use permit. We affirm.
In the summer of 1993, Four County negotiated a sales contract to purchase from the Presbyterian Church of Washington, Missouri, its church property ("the church property"). Four County operates a mental health day treatment center and thrift shop known as Harmony House. Since at least 1990, Four County's program has been located directly across the street from the church property in the same residential neighborhood. Four County wanted to move Harmony House across the street because the church property would be more handicap accessible and help it comply with various state and federal regulations. The sale was conditioned, among other things, on Four County receiving a special use permit from the City to operate a mental health day treatment center in a residential zoning district. Four County applied for a special use permit, and it was referred to the planning and zoning commission of the City for its review. The planning and zoning commission recommended the city council approve the special use. On October 18, 1993, the city council held a public hearing on the application; two weeks later, four members of the eight member city council voted for issuance, three voted against, and one abstained due to a statutory conflict of interest. Based upon this vote, the City refused to issue the special use permit to Four County.
On December 1, 1993, Four County and the Presbyterian Church of Washington, Missouri, filed a petition for review in circuit court under the Administrative Procedure and Review Act, § 536.100, RSMo 1994,[2] challenging the City's denial of the special use permit. The city council's findings of fact and conclusions of law were filed, and a hearing was held before the court. On November 23, 1994, the court ruled the city council must issue the special use permit by either passing proposed Ordinance No. 7462 or by such other fashion as the city council may elect because the City's denial was arbitrary, capricious, and not supported by competent and substantial evidence.
Initially, the City asserts the appeal is moot because Four County applied for and received a special use permit for its present location, and because Four County's purchase agreement expired, it therefore no longer had a legal or equitable interest in the church property.[3] We disagree. Clearly, Four County's pursuit of a special use permit in 1995 for its present location indicates no intent to abandon the sought use at the church property. Four County applied for the 1995 special use permit because in the absence of such a permit, it could not rebuild its building in case of a disaster. Indeed, the evidence shows that the special use permit for the present location was not intended as a replacement for the use at the church property but rather as a protection of its current operations. Although Four County's purchase agreement has expired, at oral argument Four County expressed a desire to purchase this property if it attains a special use permit.[4] That intent on behalf of Four County is more than sufficient to present this court with a live controversy. Cunningham *700 v. Bd. of Aldermen of Overland, 691 S.W.2d 464, 470 (Mo.App.1985).
Furthermore, Four County's lack of a contractual right to purchase the property has no bearing on the city council's decision to grant or deny a special use permit. The City's special use regulations do not require an applicant for a special use permit to own the property, to have a contractual right in the property, or to have an equitable interest in the property.[5] Since the City's special use regulations do not require an applicant to have a legal or equitable interest in the property for which the permit is sought, we decline to impose such a requirement. Point denied.
We address first the City's second point on appeal. The City asserts the trial court lacked jurisdiction to rule because Four County had failed to exhaust all administrative remedies under § 89.100. The City contends that where a city council delegates to itself the power to grant or deny a special use permit, § 89.100 provides the appropriate method of review. The City asserts § 89.100 required the city council's decision to be appealed to the board of adjustment. We disagree.
The relevant part of § 89.100 authorizes appeals to the board of adjustment "by any person aggrieved ... by any decision of the administrative officer." § 89.100. Appellant maintains the city council was acting as the "administrative officer" when it denied the special use permit because a city council, though a legislative body, acts administratively when deciding whether to grant or deny a special use permit. Williams v. City of Kirkwood, 537 S.W.2d 571, 574 (Mo.App. 1976) (citing State ex rel. Manchester Improvement Company v. City of Winchester, 400 S.W.2d 47, 48[1] (Mo.1966)). Appellant has cited no cases that hold a city council acting administratively is an "administrative officer" under § 89.100. In fact, the two cases the City cites in support of its interpretation of § 89.100 involve decisions made by a city engineer and a zoning inspector. See N.G. Heimos Greenhouse, Inc. v. City of Sunset Hills, 597 S.W.2d 261 (Mo.App.1980); Westside Enterprises, Inc. v. City of Dexter, 559 S.W.2d 638 (Mo.App.1977). Thus, although a city council acts administratively when deciding whether to issue a special use permit, the city council is not an "administrative officer" as contemplated by § 89.100.
The appropriate method of reviewing a city council's administrative decision to grant or deny a special use permit was resolved in Deffenbaugh Industries, Inc. v. Potts, 802 S.W.2d 520, 524 (Mo.App.1990) (Citations omitted). "The judicial review of a zoning and planning decision by a municipal agency is provided by § 89.110,[6] and so controls."[7]Id. Point denied.
*701 In its first point on appeal, the City contends the trial court erred in granting judgment in favor of Four County because the denial of the special use permit was not arbitrary or capricious and was supported by substantial evidence. Under § 89.110, the scope of judicial review, upon the whole record, is that such decisions must be supported by competent and substantial evidence. State ex rel. C.C.G. Management Corp. v. City of Overland, 624 S.W.2d 50, 54 (Mo.App. 1981); Cohen v. Ennis, 318 S.W.2d 310, 313 (Mo. banc 1958). We review the findings and decision of the city council to deny the special use permit and not the judgment of the circuit court. City of Cabool v. Mo. State Bd. of Mediation, 689 S.W.2d 51, 53 (Mo. banc 1985). We review the evidence in the light most favorable to the council's decision and we may not substitute our judgment for that of the council's. State ex rel. C.C.G. Management Corp., 624 S.W.2d at 54.
The City made its findings of fact and conclusions of law by applying the evidence to the review criteria found in § 465.050 of the Washington City Code. The criteria are as follows:
1. The compatibility of the proposal, in terms of both use and appearance with the surrounding neighborhood.
2. The comparative size, floor area and mass of the proposed structure in relationship to adjacent structures and buildings in the surrounding properties and neighborhood.
3. The frequency and duration of the various indoor and outdoor activities and special events, and the impact of these activities on the surrounding area.
4. The capacity of adjacent streets to handle increased traffic in terms of traffic volume, including hourly and daily levels.
5. The added noise level created by activities associated with the proposed use.
6. The requirements for public services where the demands of the proposed use are in excess of the individual demands of adjacent land uses, in terms of police and fire protection, and the presence of any potential or real fire hazards created by the proposed use.
7. Whether the general appearance of the neighborhood will be adversely affected by the location of the proposed use on the parcel.
8. The impact of night lighting in terms of intensity, duration and frequency of use, as it impacts adjacent properties and in terms of presence in the neighborhood.
9. The impact of the landscaping of the proposed use, in terms of maintained landscaped areas versus areas to remain in a natural state, as well as the openness of landscape versus the use of buffers and screens.
10. The impact of significant amount of hard-surfaced areas for buildings, sidewalks, drives, parking areas and service areas, in terms of noise transfer, water runoff and heat generation.
§ 465.050, Washington City Code.
Before reviewing the findings and conclusions of the city Council, we note that a "special permit" is a kind of administrative permission that allows a property owner to use his land in a way expressly permitted under certain conditions in the zoning ordinance itself. Ford Leasing Develop. Co. v. City of Ellisville, 718 S.W.2d 228 (Mo.App. 1986) (citing 82 Am.Jur.2d Zoning and Planning § 281 at p. 827 (1976)). From that premise, the general rule is that "if the proposed use meets the standards prescribed by the local ordinance, the [agency] is bound to issue the special use permit subject to reasonable conditions which it might impose to mitigate any harmful effects that might otherwise result." Rohan, Zoning and Land Use Controls, Vol. 6, Chapter 44.01[4], p. 19.
Using the factors set forth in § 465.050, the City cited five conclusions of law to support its denial of the special use permit:
a) The proposed use by the Harmony House program is incompatible in terms of both use and appearance with the surrounding residential neighborhood;
b) The frequency and duration of the indoor and outdoor activities and special events of the Harmony House program *702 will adversely impact the surrounding residential neighborhood;
c) The added noise level created by the smoking outside by members and staff of the Harmony House program, as well as the increase of the use of the building from church uses to that of a daily treatment center and thrift shop will adversely impact the surrounding residential neighborhood;
d) The general appearance of the residential neighborhood will be adversely affected by the Harmony House program and thrift shop, which are essentially commercial uses; and
e) The Harmony House program will provide treatment and services to its members which include criminals as well as those persons who are insane, which is not permitted in the proposed R-3 multi-family zoning district as a special use.
In addition to the conclusions cited above, the City argued at oral argument two conclusions sufficiently supported its denial of the special use permit: First, the permit would allow a substantial increase in use (specifically the operation of a thrift shop in a former church); and second, the permitted use would create an adverse impact on the surrounding neighborhood. However, we find the City's findings of fact and conclusions of law wholly incompetent and unsubstantiated by the evidence presented to it.
First, there is no evidence to support the City's contention there would be a substantial increase in use that would adversely impact the surrounding neighborhood. Further, § 465.050(1) only requires the city council to consider the compatibility of the proposal, in terms of use and appearance, with the surrounding neighborhood. Thus whether the thrift shop run by Four County would create a substantial increase in use over that of the former Presbyterian Church congregation is not a dispositive factor; the analysis is whether the proposal is compatible with the surrounding neighborhood. Four County's program and thrift shop had existed in the neighborhood for four years without incident. Therefore, City's claim fails because no evidence presented to the city council supported a finding that moving the day treatment center or the thrift shop to a building across the street would adversely impact the surrounding neighborhood.
Second, City's contention that Four County's proposed use is violative of the R-3 zoning designation is unsupported by competent evidence. Although some members of the day treatment program may have been charged with misdemeanors, extensive testimony before the planning and zoning commission and the city council on two separate occasions demonstrated Four County's admissions process specifically screened out applicants with a felony record. The Four County day treatment program serves community members with severe mental illness. Four County's program is not an institution for criminals as contemplated by the Washington City Code.
Finally, Four County met the objective criteria set out in City's ordinance. The City's planning and zoning commission found the application in compliance with § 465.050 of the City Code and recommended approval. No evidence was presented to the city council that contradicted the provisions listed by Four County in its application to satisfy the conditions determined by § 465.050. Not only did Four County have an objectively verifiable four-year history of satisfying the conditions required for the special use permit, it also provided additional safeguards in its application that went unrefuted by City in its findings and conclusions. Therefore, no competent evidence existed on which the city council could deny the special use permit. Point denied.
The judgment of the circuit court is affirmed.
CRAHAN, P.J., and CRANDALL, J., concur.
NOTES
[1] Four County Mental Health Services is now known as Crider Center for Mental Health.
[2] All further statutory references are to RSMo 1994 unless otherwise indicated.
[3] The City filed a letter immediately prior to oral argument under Rule 370 of the Eastern District Court of Appeals Special Rules claiming "new developments" rendered this appeal moot. We note counsel for the City has misinterpreted Rule 370. The two claims of mootness by counsel are not "new developments" contemplated by Rule 370(b). Rule 370(b) allows counsel to call the court's attention to intervening decisions or new developments by sending a short letter with the supplemental citations to the clerk. The reference to "supplemental citations" makes clear this rule envisions late-breaking court decisions or changes by the legislature that may affect a pending appeal. The events brought to this court's attention under these circumstances were better raised by either leave of this court to file a supplemental brief under Rule 370(a) or by a separate motion to dismiss. See Raymore-Peculiar Reorganized Sch. Dist. v. Stewart, 424 S.W.2d 752, 753 (Mo.App. 1968).
[4] Under § 465.060 of the Washington City Code, any special use permit granted by the city council is valid for at least one year from the date of approval. Thus Four County would have at least a year to convince the present owner of the former church to sell the property.
[5] By way of comparison, we note St. Louis City Ordinance 26.80.010(C)(1) on Conditional Uses states: "An application for a Conditional Use Permit [similar to the special use permit at issue here] may be filed by the owner, tenant or their representative, or any prospective owner, tenant, or their representative, of the property in question." (Emphasis added).
[6] The pertinent provisions are as follows: "Any person or persons jointly or severally aggrieved by any decision of the board of adjustment, or any officer, department, board or bureau of the municipality, may present to the circuit court of the county or city in which the property affected is located a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality...." (Emphasis added).
[7] Section 89.110 allows any aggrieved person to file a petition for a writ of certiorari, duly verified, to the circuit court where the property is located claiming the decision was illegal. Although Four County's original petition was duly verified, we note, sua sponte, it's first amended petition was not verified as required per § 89.110. Nevertheless, the verification requirement is not so rigid as to render the unverified first amended petition "unsalvageable." Federated Mortg. and Inv. Co. v. Jones, 798 S.W.2d 719, 721 (Mo. banc 1990) (quoting Drury Displays v. Board of Adjustment, 760 S.W.2d 112, 114 (Mo. banc 1988)). First, and most importantly, the parties make no claim of prejudice. Second, the record reflects that, but for the lack of verification, proper procedure was followed. Although Four County's petitions were styled a "Petition for Review" under Chapter 536, the miscue was not fatal. Life Medical System, Inc. v. Franklin County Commission, 810 S.W.2d 554, 559 (Mo. App.1991) (quoting Deffenbaugh Industries, Inc., 802 S.W.2d at 526). The petition here ultimately served the purpose of a writ of certiorari. The City's findings and conclusions, reports, and various minutes of the city council meetings were filed by Four County with its "First Amended Petition." Thus the circuit court had before it all of the information used by the city council to make its decisionthe express purpose of a writ of certiorari under the planning and zoning statute. See § 89.110. Therefore, we find the circuit court had jurisdiction.