**VILLAGE LUTHERAN CHURCH,**
**Plaintiff–Respondent,**

**v.**

**CITY OF LADUE, a municipal corporation, et al., Defendants–Appellants.**

No. 70072.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 29, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 17, 1996.

Application to Transfer Denied
Jan. 21, 1997.

Moser and Marsalek, P.C., F. Douglas O'Leary, St. Louis, for Defendants–Appellant.

Rosenblum, Goldenhersh, Silverstein & Zafft, P.C., Shulamith Simon, St. Louis, for Plaintiff–Respondent.

HOFF, Judge.

City of Ladue appeals from a judgment of the circuit court which reversed the Ladue City Council's denial of Village Lutheran Church's application for special use permit. We affirm the judgment of the circuit court with modification.

Village Lutheran Church ("the Church") has been located on 4.2 acres of land in the City of Ladue ("the City") since 1949. The present church structure was built in 1968 and an attached education building was constructed in 1973. Because of the growth in the number of young church members that occurred in the past twenty years and the growing interest in youth activities, the Church desires to construct an addition to the existing structure.

The Church's property is zoned as part of a "B" zoning district under the Ladue Zoning

Code. Under § VII paragraph D of the Ladue Zoning Code, any alteration or extension of a church requires a special use permit. Although the Church never applied for a special use permit when it constructed the original church facility or first educational addition, the Church filed its application for special use permit with the City to expand its church facilities on March 25, 1993.

The Church proposed an addition of a multi-purpose building to be attached to the existing church structure. This multi-purpose building would include a junior high size basketball court and classrooms. Additionally, the Church proposed two adult Bible classrooms, one of which "fills in" a gap in the existing church structure and one that is to be added on to the back of the existing church structure. The Church's goal in building the proposed additions is to accommodate the growth in the Sunday school, pre-school summer Bible program, and various youth group activities. Additionally, the Church desires to maintain a unified structure so that church members would not have to exit the existing church structure and reenter a new structure.

Architectural and engineering firms were retained to develop and draft appropriate plans. As designed, the buildings on the Church property, both existing and proposed, would occupy 12% of the Church's property. The parking areas, existing and proposed, would cover 28% of the property and the sidewalks would cover 2% of the property. Grass and landscaping would remain on 58% of the property.

The Ladue Zoning and Planning Commission ("the Commission") considered the Church's application at four meetings on June 30, 1993, September 22, 1993, November 18, 1993, and April 5, 1994. On April 13, 1994, the Commission issued a report to the Ladue City Council finding the Church's proposed additions satisfied the criteria listed in § VII paragraph C of the Ladue Zoning Ordinance for granting a special use permit. Specifically, the Commission found the Church's proposed addition is an appropriate use of the site and it does not appear that the project will have a material adverse affect upon the residents of the area in the vicinity of the site or the residents of the City in general.

Additionally, under the specific factors under § VII paragraph C, the Commission found there would be: (1) no significant increase in street traffic; (2) no fire hazards; (3) no undue concentration of people on the site; (4) & (5) no increase in required municipal services and expenditures; and (6) no likelihood of actual injury to the character of the district or of damage to property values in the area resulting from the proposed use.

The Commission did, however, find a zoning violation of the construction as proposed. The portion of the site plan showing a side yard of 25 feet was in violation of the Ladue Zoning Ordinance because the Church's property was in a "B" zoned residential area, and under § V paragraph B(1), the width of a required side yard must be at least fifty feet. The Commission recommended approval of the special use permit if the Church provided for a 50 foot side yard. If not provided for, the Commission's recommendation was for denial of the Church's application.

Since the Commission's report was filed, the Church modified its plan with respect to the side yard. The proposed side yard now measures 155 feet.

A Ladue City Council meeting was held on August 29, 1994 where the Council heard evidence from the Church in favor of the application and evidence from residents who lived in proximity of the Church in opposition to the application. On November 21, 1994, the Ladue City Council issued its Findings of Fact, Conclusions of Law and Decision which denied the Church's application for special use permit.

On December 20, 1994, the Church filed a petition for judicial review, writ of certiorari, declaratory judgment and damages. The counts requesting declaratory judgment and damages were later deferred. On February 21, 1995, the circuit court entered its amended judgment finding that "the decision of the Ladue City Council is not authorized by law in that the Ladue zoning regulations cannot be enforced against Village Lutheran Church and further finds that there was not compe-

tent and substantial evidence on the record to support the denial of the application for special permit." The circuit court reversed the decision of the Ladue City Council and ordered the City to grant the Church's application for special use permit. This appeal followed.

In its first point on appeal, the City contends the trial court erred in ruling that Ladue's zoning ordinance could not be applied to the Church. The City asserts that regulation of a religious institution and its activities in a residential district under a zoning ordinance is a proper exercise of its police power. Under this police power, the City insists it has the right to attempt to provide a balance between the Church's needs and the impact on neighboring homes. We find this issue dispositive of the case.

■■■ We review the findings and decision of the city council to deny the application for special use permit and not the judgment of the circuit court. *City of Cabool v. Mo. State Bd. of Mediation*, 689 S.W.2d 51, 53 (Mo. banc 1985). We review the evidence in the light most favorable to the council's decision. *State ex rel. Presbyterian Church v. City of Washington*, 911 S.W.2d 697, 701 (Mo.App.1995). We may not substitute our judgment of the evidence for that of the council's. *Id.* Under § 89.010 RSMo 1994, we review the whole record to determine if the council's decision is supported by competent and substantial evidence. *Id.*

■ Section 89.020 RSMo 1994 gives power to municipal legislative bodies to enact regulatory zoning ordinances in their municipalities. Section 89.020.1 RSMo 1994 states:

> For the purposes of promoting health, safety, morals or the general welfare of the community, the legislative body of all cities, towns, and villages is hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, the preservation of features of historical significance, and the location and use of buildings, structures and land for trade, industry, residence or other purposes.

In 1959, the Missouri Supreme Court specifically addressed the scope of § 89.020 [1] in *Congregation Temple Israel v. City of Creve Coeur*, 320 S.W.2d 451 (Mo.1959). The Supreme Court held that the phrase "the location and use of buildings, structures and land for trade, industry, residence or other purposes", as used in § 89.020, does not give municipalities power over the use of property used for religious purposes by religious organizations whose rights to free exercise of religion are protected by constitutional guaranties. *Id.* at 454.

The Supreme Court stated that municipalities have regulatory power over churches under their police power, but that power is purely limited to safety regulation. *Id.* at 456. Proper safety regulations over a church were held to include: safety of boilers, smokestacks and similar facilities, sanitation, manner and type of construction for fire protection, off-street parking facilities, sewage disposal and other matters related to the public health, safety, and welfare of the municipal residents. *Id.*

Section 89.020 does not give municipalities zoning power over churches. Any regulatory power a municipality has over churches is purely for safety regulation. The decision of the Council was based on its zoning ordinances and not under enumerated safety regulations allowed under a municipality's police power as enunciated in *Congregation Temple Israel.* Therefore, we find the circuit court was correct in its assessment that the Council's decision "is not authorized by law in that the Ladue zoning regulations cannot be enforced against Village Lutheran Church." Accordingly, we affirm the judgment of the circuit court reversing the decision of the Council, but modify the judgment to reflect that the City need not issue a special permit because the Church need not apply nor re-

1. *Congregation Temple Israel* analyzed § 89.020 RSMo 1949. However, the language of that section has not changed and remains the same as the language at issue here in § 89.020.1 RSMo 1994.

ceive a special use permit before proceeding with any new construction.

Affirmed with modification.

CRAHAN, P.J., and GRIMM, J., concur.