**ST. JOHN'S EVANGELICAL
LUTHERAN CHURCH,
Ellisville, Respondent,**

v.

**CITY OF ELLISVILLE, Missouri,
et al., Appellants.**

**No. ED 82142.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 28, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 24, 2003.

Application for Transfer Denied
Jan. 27, 2004.

Donald Kenneth Anderson, St. Louis, MO, for appellant.

Paul E. Martin, Michael N. Kern, Clayton, MO, Kevin M. O'Keefe, St. Louis, MO, for respondent/cross-appellant.

B. Allen Garner, Jefferson City, MO, for Amicus Curiae.

MARY R. RUSSELL, Judge.

City of Ellisville, Terrance B. Keran, City Engineer, and the Board of Adjustment (collectively "City") appeal from a judgment in the Circuit Court of St. Louis County permanently enjoining the City of Ellisville from interfering with the erection of a monument sign by St. John's Evangelical Lutheran Church in Ellisville ("Church"). City asserts that the trial court's judgment was improper and that there was an adequate remedy at law by a writ of certiorari under section 89.110 RSMo 2000.[1] We agree and reverse the judgment of the circuit court and remand the cause to the trial court to exercise its jurisdiction under section 89.110.

Church applied for a sign permit from the City of Ellisville ("Ellisville") on February 20, 2000, seeking authorization to construct a monument sign near the entrance of Church's property on Manchester Road. City Engineer Terrence Keran ("City Engineer") denied Church's sign permit request for the following reasons: (1) the proposed sign exceeded the maximum allowable height of 10 feet; (2) the proposed sign exceeded the signage area permitted when viewed under the city sign code allowing the maximum sign face area;[2] (3) the proposed sign included a changeable letter area in excess of that allowed under Ellisville's code, and included moving letters or characters, which the sign code strictly prohibited; and (4) Church's application incorrectly designated the location of the proposed sign relative to the right-of-way of Manchester Road.

Church appealed City Engineer's denial of its sign request to the Board of Adjustment of the City of Ellisville ("Board"). Church asserted in a letter to Board that City Engineer improperly applied Ellisville's sign code regulations to it, and asserted that Ellisville's sign regulations as applied to Church were an "unconstitution-

---

1. All further statutory references are to RSMo 2000 unless otherwise indicated.

2. City Engineer testified at trial that he did not review Church's application under Ellisville City Code 21–47.2, which specifically regulates "religious signs," in order to allow Church a larger permitted signage area for its proposed sign. He stated in his letter of denial to Church, and he testified similarly at trial, that even using the more permissive signage limits of Ellisville City Code 21–45.1.4.2, which regulates signs in commercially zoned districts, Church's proposed monument sign exceeded the permitted signage size limits. Church is located in an area zoned "C–3 Commercial."

al infringement on [Church's] right to freely exercise its religious mission." Prior to any action by Board on Church's appeal, Church withdrew its appeal and resubmitted an application for a sign permit to City Engineer. Church's second permit application was identical to its first, except for a revision of the location of the sign relative to Manchester Road and a copy of Church's appeal letter to Board. City Engineer again denied Church's sign permit application. The second denial of Church's sign permit request stated the same reasons as the previous denial, with the acknowledgment that Church had corrected the location relative to the right-of-way of Manchester Road.

Ellisville's Planning and Zoning Commission ("Commission") heard Church's petition to appeal City Engineer's denial to Board. The Commission voted to transmit Church's appeal to Board with a negative recommendation.

Prior to a hearing by Board, Church filed a petition in the Circuit Court of St. Louis County against City. Its petition sought declaratory and injunctive relief under three counts. First, Church alleged that City's sign regulations were void and illegal on their face and as they applied to Church's property. Second, it asserted that City's sign regulations violated section 89.020 because they restricted Church's land use. Third, it sought 42 U.S.C. section 1983 (1994) damages for its allegations that City was interfering with Church's free exercise of religion.

Six days later, Board held a hearing on Church's appeal of its sign permit denial. At the Board hearing, Church asserted the constitutional arguments outlined in its pending trial court action, and asked Board to grant it a variance from the sign code.[3] By a vote of 3 to 1, Board upheld City Engineer's denial of Church's sign permit application. Board's decision was expressed in a written decree on July 29, 2000. It found that denial of a variance was appropriate under Ellisville City Code 30–9 and Chapter 89 RSMo. Board stated that Church had failed to present evidence showing that the "unique character" of its property entitled it to a variance or that any "unnecessary hardship or practical difficulties" would result if a variance was not granted.

After Board's denial, Church amended its petition in the trial court to add count IV, seeking a writ of certiorari and judicial review of Board's denial of Church's variance request under section 89.110.[4] Church's equitable counts seeking declaratory and injunctive relief remained unchanged, except that it added to counts I and III that the federal Religious Land Use and Institutionalized Person Act of 2000 ("RLUIPA"), Pub.L. No. 106–274,

3. Despite Church's assertion that it never requested a variance from Board, Board treated Church's proceeding as a variance request, and Church indicated it was willing to proceed at the Board hearing as if it were a variance action, and presented evidence in accordance with the standard needed to obtain a variance.

4. In relevant part, section 89.110 states:
Any person ... aggrieved by any decision of the board of adjustment ... may present to the circuit court ... a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of illegality.... [T]he court may allow a writ of certiorari directed to the board of adjustment to review such decision of the board.... [If necessary the court] may take additional evidence ... which shall constitute a part of the proceeding upon which a determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review.... All issues in any proceeding under sections 89.080 to 89.110 shall have preference over all other civil actions and proceedings.

114 Stat. 803 (2000), further prohibited City from enforcing its sign code against Church.

The trial court conducted a hearing on Church's amended petition and thereafter entered its judgment in favor of Church. The trial court found that Ellisville's sign regulations were land use regulations within the meaning of Chapter 89 RSMo. The trial court concluded that City had no authority under section 89.020[5] to apply its sign regulations to Church and, therefore, acted improperly in denying Church's request for a sign permit. Because the trial court found that the matter could be resolved under section 89.020, it did not consider Church's requests for relief under any federal statutes.

The trial court stated that since 1959, section 89.020 has been construed "as not giving municipalities power over the property used for religious purposes by religious organizations because of Free Exercise guarantees." Citing *Congregation Temple Israel v. City of Creve Coeur* and *Village Lutheran Church v. City of Ladue,* the court suggested City's power to regulate Church was "limited to safety regulations." *Congregation Temple Israel,* 320 S.W.2d 451 (Mo.1959); *Vill. Lutheran Church v. City of Ladue,* 935 S.W.2d 720 (Mo.App.1996) [hereinafter *Village Lutheran I*], *holding further clarified by Vill. Lutheran Church v. City of Ladue,* 997 S.W.2d 506, 508–09 (Mo.App.1999) [hereinafter *Village Lutheran II*].

The trial court found that Church's sign permit request was not denied by City for safety reasons. The trial court stated that City did not show Church's proposed sign was unsafe, obstructive, a traffic hazard, or that it invoked City's police powers. Because the trial court found that the denial of the variance was not based on safety reasons as the court believed section 89.020 required, it held "that the denial of the variance was not authorized by law and was arbitrary and capricious." The trial court instructed that Church could construct its proposed sign without a permit from City. Further, the trial court permanently enjoined Ellisville "from interfering with the erection of [Church's] monument sign." The trial court dismissed all other relief sought by Church in its petition. City timely filed its notice of appeal with this court.

This court will uphold the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it misstates or misapplies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

The issues raised on appeal question the propriety of the trial court hearing evidence and ruling on the merits of Church's request for injunctive relief rather than utilizing statutory review procedures pursuant to section 89.110, including the issuance of a writ of certiorari, to review Board's decision.

City's first point on appeal asserts that the trial court erred in enjoining Ellisville from prohibiting Church's sign construction in that the court was without jurisdiction to grant Church declaratory and injunctive relief under counts I, II, and III of its petition because count IV, the request for review of the Board's decision by writ of certiorari, was still pending.

**5.** In relevant part, section 89.020 states:
For the purpose of promoting health, safety, morals or the general welfare of the community, the legislative body of all cities ... [can] regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces ... and the location and use of buildings, structures and land for trade, industry, residence or other purposes.

City is correct in its assertion "that if there is an adequate statutory remedy the procedure prescribed is exclusive." *Normandy Sch. Dist. v. City of Pasadena Hills,* 70 S.W.3d 488, 492 (Mo. App.2002). *Normandy,* however, states that "[s]tatutory review by writ of certiorari [under section 89.110] is unavailable when the aggrieved party is challenging the validity of an ordinance." *Normandy,* 70 S.W.3d at 492.[6] Where a party challenges the lawfulness of an ordinance, the trial court's jurisdiction is not limited to review under section 89.110. *Id.; see also State ex rel. Drury Displays v. City of Columbia,* 907 S.W.2d 252, 254–55 (Mo. App.1995) (upholding a trial court's finding that writ of certiorari review under section 89.110 was not an adequate remedy to examine the validity of an ordinance upon which the Board of Adjustment's decision at issue was based).

Here, Church's amended petition sought three counts of declaratory and injunctive relief challenging the validity of the application of Ellisville's code to Church and a request for review pursuant to section 89.110. In light of our holding in *Normandy,* we find that the trial court's jurisdiction was not limited to a review under section 89.110. Instead, the trial court could properly choose to exercise its general plenary jurisdiction over Church's declaratory and injunctive claims, rather than its limited statutory jurisdiction under section 89.110 over Church's count IV. To the extent that the court could properly consider Church's injunctive requests, City's first point on appeal is denied.

City's second point alleges the trial court erred because it simultaneously exercised its general plenary jurisdiction and its limited statutory jurisdiction. While the trial court could choose to exercise general plenary jurisdiction over Church's counts I, II, and III, it could only do so if it abstained from exercising its statutory jurisdiction under section 89.110. *See Drury Displays,* 907 S.W.2d at 254–55. So long as "the trial court did not exercise its limited jurisdiction" under section 89.110, however, "there was no conflict with its exercise of general plenary jurisdiction in considering a count for declaratory judgment." *Id.* at 255.

*Normandy* is also instructive on this point. In *Normandy,* the city asserted that the trial court could not exercise "both its general plenary jurisdiction pursuant to the declaratory judgment act and its limited statutory jurisdiction pursuant to section 89.110." 70 S.W.3d at 492. *Normandy* held that the "school district's request for limited review under section 89.110 was an alternative to its request for general relief by way of declaratory judgment."[7] *Id.* An error does not arise sim-

6. In *Normandy,* a school district challenging the validity of a city ordinance sought declaratory relief and in the alternative requested review of its case under section 89.110. *Normandy,* 70 S.W.3d at 491. The trial court entered summary judgment in favor of the school district on its declaratory judgment count. *Id.* at 491. The city unsuccessfully asserted on appeal that the trial court did not have jurisdiction to rule on the school district's request for declaratory judgment because statutory review under section 89.110 was the proper means for review of school district's petition. *Id.* at 492. Our court affirmed the trial court's grant of summary judgment in favor of school district. *Id.* at 490.

7. City asserts the decision in *Normandy* reflects that the school district's request for review under section 89.110 was pled in the alternative to its requests for declaratory relief, and that, therefore, *Normandy* should not be applied to Church's case because Church failed to plead count IV in the alternative. We do not find that Church was required to plead count IV in the alternative. We find nothing in *Normandy* limits its holding to cases where requests for injunctive relief and statutory review are pled in the alternative.

ply because a party seeks both declaratory or injunctive relief and review under section 89.110 in its petition. *Drury Displays*, 907 S.W.2d at 255. Instead, "[i]t is the responsibility of the trial court to [issue judgment on the merits as to] only one of those two counts." *Id.* at 255. We will not find trial court error where the court "exercise[s] only its general plenary jurisdiction ... and dismisse[s] the claim[s] for limited statutory review under section 89.110." *Normandy*, 70 S.W.3d at 492. If the trial court does not exercise its section 89.110 jurisdiction "there [is] no conflict with its exercise of general plenary jurisdiction." *Id.* at 492–93.[8]

We find that the trial court in the instant case did not attempt to exercise both its general plenary jurisdiction and its statutory jurisdiction under section 89.110. The trial court record and the judgment entered in favor of Church both suggest that the trial court exercised only its general plenary jurisdiction over Church's declaratory and injunctive requests, rather than its statutory jurisdiction under section 89.110.

While it is clear from the trial court's judgment that it considered and granted Church's request for injunctive relief, no evidence was presented at trial or outlined in the court's judgment that would suggest the trial court exercised its jurisdiction under section 89.110. The trial court's judgment clearly illuminates its belief that Ellisville's sign ordinance is invalid under the Supreme Court of Missouri's decision

in *Congregation Temple Israel*, 320 S.W.2d 451 (interpreting the scope of section 89.020 as applied to religious organizations). City argues that the trial court's statement that "the denial of the variance [to Church] was not authorized by law and was arbitrary and capricious" suggests that the trial court reviewed Board's decision pursuant to section 89.110. We disagree. The trial court's use of the words "arbitrary and capricious" reflects its assertion that Ellisville's sign regulations should not have been applied to Church, but it is not indicative of an exercise of statutory review. The trial court did not have before it the records necessary for it to properly exercise statutory review of Board's decision. The trial court did not issue a writ of certiorari to Board, as it would have been required to do if it was acting under section 89.110, and there was no return by Board, which is required for the trial court to review the evidence considered by Board. *See Hart v. Bd. of Adjustment of City of Marshall*, 616 S.W.2d 111, 113, 115 (Mo.App.1981).[9]

The trial court did not clearly label the claims it was dismissing after enjoining Ellisville from interfering with Church's erection of the monument sign. For the reasons discussed above, however, we find that the trial court's statement that Church's "petition [was] dismissed as to all other relief sought" intended to dismiss Church's count IV claim for review under section 89.110. We find that the trial court chose to exercise its general plenary

---

8. *Cf. Deffenbaugh Indus., Inc. v. Potts*, 802 S.W.2d 520, 522 (Mo.App.1990) (holding that a grant of declaratory relief was without effect where the circuit court *had* exercised its special statutory jurisdiction because it could not exercise both *its* limited statutory jurisdiction and its general plenary jurisdiction in the same proceeding); for a discussion of the holding in *Deffenbaugh, see also Drury Displays*, 907 S.W.2d at 254–55.

9. Because section 89.110 review limits the trial court to matters presented to and passed upon by the board, a return of the board is necessary for the circuit court to determine if the decision of the board was supported by substantial and competent evidence on the whole record. *See*Hart, 616 S.W.2d at 115.

jurisdiction over Church's declaratory and injunctive requests without acting pursuant to its statutory jurisdiction in section 89.110. Because we find that the trial court did not simultaneously exercise both its general plenary jurisdiction and its statutory section 89.110 jurisdiction, City's second point is denied.[10]

■ Although we have found that the trial court had jurisdiction to consider Church's requests for injunctive relief, we now consider whether or not the relief granted by the trial court was proper, that is, if the court properly exercised its jurisdiction over Church's claims.

■ "The molding of an appropriate injunctive decree rests largely in the sound discretion of the trial court, which is vested with a broad discretionary power to shape and fashion the relief it grants to fit particular facts, circumstances, and equities." *City of Bridgeton v. City of St. Louis*, 18 S.W.3d 107, 114–15 (Mo.App. 2000). We will uphold an injunction unless there is no substantial evidence to support it or unless it erroneously declares or applies the law. *Id.* at 115. Although we will defer to the trial court's factual findings, "we independently evaluate the trial court's conclusions of law." *Mullenix–St. Charles Props., L.P. v. City of St. Charles*, 983 S.W.2d 550, 555 (Mo.App.1998).

In enjoining Ellisville from preventing Church's erection of a monument sign, the trial court stated that "[s]ince at least 1959 the Missouri Supreme Court has construed [section 89.020] as not giving municipalities power over the property used for religious organizations because of Free Exercise guarantees." Citing *Congregation Temple Israel*, 320 S.W.2d 451, the court stated

that "[c]ities have police power only [to regulate churches]" and stated that this police power was "limited to safety regulations." City Engineer testified at trial that Church's sign was not denied under Ellisville's sign code provisions prohibiting signs that are unsafe, obstructive, or hazardous to traffic. The trial court, therefore, found that City's denial of Church's sign permit request exceeded City's ability to regulate Church as limited by *Congregation Temple Israel*. We disagree that City's regulatory powers were so limited.

A summary of three cases in this area is necessary to understand Missouri law. In *Congregation Temple Israel*, the City of Creve Coeur denied Temple Israel a permit to build worship facilities. 320 S.W.2d at 451. In response, Temple Israel commenced a declaratory judgment action seeking to have the city's zoning ordinances declared void, asserting that application of the city's ordinances wrongly impaired its free exercise of religion. *Id.* at 451, 453. The appellate court reviewed the zoning powers given to cities under section 89.020 and found that the city's power to regulate "trade, industry, residence, and other similar purposes" implied authority over the location of private property and not over churches. *Id.* at 454. The court stated that "other purposes" as used in section 89.020 "should not be broadened by construction to include use of property for religious purposes by religious organizations whose rights to free exercise of religion are protected by such constitutional guaranties." *Id.*

Because the court did not believe the legislature intended section 89.020 to enable cities to "restrict location and use of

---

**10.** In its first point on appeal, City also asserts that the trial court lacked jurisdiction to issue any judgment because it failed to issue a writ of certiorari pursuant to section 89.110 and, therefore, had no jurisdiction to rule on

the merits of count IV of Church's amended petition. Because we find above that the trial court did not rule on the merits of count IV and instead improperly dismissed it, this portion of City's appeal is denied.

buildings and land for churches," it noted that the purpose of zoning ordinances was not to exclude churches from any districts. *Id.* at 454–55. The court noted that excluding churches from residential areas, for example, could effect their free exercise of religion by forcing them to locate further from their members or into higher-priced, noisier commercial districts. *Id.* at 455. It concluded that no city could prohibit churches from building in residential districts because it found that municipalities could only constitutionally regulate churches pursuant to section 89.020 if the regulation related to public health, safety, or welfare. *Id.* at 456. For example, the court listed safety of boilers and smokestacks, fire protection, off-street parking, and sewage disposal as areas that a municipality could rightfully regulate as to a church. *Id.* The court sought to limit the application of section 89.020 to churches in order to protect churches' "fundamental freedom of religious worship." *See id.* at 457.

*Village Lutheran I* cited *Congregation Temple Israel* in holding that a city could not apply its zoning ordinance to prevent a church from building a multi-purpose building that violated the city's set-back requirements. *Village Lutheran I,* 935 S.W.2d at 721, 722. Because no specific safety concerns supported the city's denial of the church's request for a special use permit to construct the addition, the court held that the city could not extend its power under section 89.020 to regulate the church. *Id.* at 721–22. The court again stated that section 89.020 gives municipalities regulatory power over churches only

for safety regulation,[11] and, therefore, determined that the church did not need to request a special use permit from the city to build its addition. *Id.* at 722.

Since our holding in 1996 in *Village Lutheran I,* we have held that a church's free exercise of religion would not be impaired merely because a city required a church to apply for a special use permit under its zoning ordinances. *See Village Lutheran II,* 997 S.W.2d at 508–09. Further, in *Village Lutheran II,* we stated that *Village Lutheran I* "does not stand for the proposition that municipalities may never regulate the use of property by churches or that churches need never seek approval from municipalities to engage in certain conduct." *Id.* at 508. Instead, we held that *Village Lutheran I* "recognizes that municipalities may use their regulatory powers over churches solely for the purposes of promoting health, safety, morals, *or the general welfare of the community.*" *Id.* (emphasis added).

Many court "decisions have acknowledged that municipalities, in the exercise of their police powers, may regulate churches." [12] *Id.* We note that *Lakeshore Assembly of God Church v. Village Board of Westfield* is on point. 124 A.D.2d 972, 972, 508 N.Y.S.2d 819 (N.Y.App.Div.1986). In *Lakeshore Assembly* the court determined that there was no free exercise violation where a city sought to limit the size of a sign a church sought to erect on its property. 124 A.D.2d at 972, 508 N.Y.S.2d 819. The court held that "[i]t is wholly appropriate to impose limitations on a church property and its accessory uses

11. *Village Lutheran I* cited the holding in *Congregation Temple Israel* stating that the phrase "location and use of buildings, structures and land ..." in section 89.020 did not give municipalities power over "the use of property used for religious purposes" by groups whose "rights to free exercise of religion are protect-

ed by constitutional guaranties." *Village Lutheran I,* 935 S.W.2d at 722 (citing *Congregation Temple Israel,* 320 S.W.2d at 454).

12. A list of cases can be found in *Village Lutheran II,* 997 S.W.2d at 508.

when reasonably related to the general welfare of the community, including the community's interest in preserving its appearance." *Id.* The court stated that because the restrictions imposed on the construction of the church's sign were not arbitrary and capricious, and because the city sought to balance the church's request with aesthetic and safety concerns, the city did not act wrongly in regulating the church's sign request. *Id.*

■ Similarly, in *Village Lutheran II* this court held:

> [T]he fact that a municipality exercises some control over the conduct of churches is not, per se, violative of the church's right to the free exercise of religion; but rather a determination of whether such regulation is tantamount to an infringement of the free exercise of religion depends on the facts and circumstances of each case.[13]

997 S.W.2d at 508–09.

Considering the facts and circumstances of this case, we find pursuant to our holding in *Village Lutheran II* that Church is subject to City's sign ordinance, and, therefore, the trial court exceeded its authority in permanently enjoining Ellisville from interfering with Church's sign construction. Because the injunctive relief requested by Church should not have been granted, Church should have been granted statutory review through its writ of certiorari count under section 89.110.

City's third point on appeal assumes arguendo that the circuit court had jurisdiction to enter its order. In light of our finding that the court's judgment was improper, this point is moot and we need not address it.

The judgment of the circuit court is reversed and the cause is remanded to the court to exercise its jurisdiction under section 89.110 consistent with this opinion.[14]

GARY M. GAERTNER, SR., P.J., and ROBERT G. DOWD, JR., J., concur.

---

13. A mere requirement that a church obtain a special use permit before building, for example, does not infringe on the free exercise of religion. *See Village Lutheran II*, 997 S.W.2d at 508–09.

14. Church's motion to dismiss this appeal is denied.